FILED

JAN 2 3 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) CHIEFTAIN ROYALTY COMPANY, | ) | **18 CV - 5 4 JED - JFJ** |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Removed from Nowata County |
| | ) | Case No. CJ-17-65 |
| (1) BP AMERICA PRODUCTION COMPANY, | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

Defendant BP America Production Company ("BP") removes this matter from the District Court of Nowata County, State of Oklahoma, to the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. As set forth below, this matter is properly removed because BP has complied with the statutory requirements for removal under 28 U.S.C. §§ 1441 and 1446, and this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), the codification of the Class Action Fairness Act ("CAFA").

## I.   INTRODUCTION

Plaintiff Chieftain Royalty Company ("Plaintiff") filed the action styled *Chieftain Royalty Company v. BP America Production Company*, Case No. CJ-17-65, in the District Court for Nowata County, State of Oklahoma, on December 27, 2017 (the "State Court Action"). BP was served with Plaintiff's Original Petition ("Petition") in the State Court Action on January 3, 2018. In the Petition, Plaintiff asserts claims on behalf of itself and a class "estimated to be more than fifty" in number (the "Class"). Plaintiff further alleges that each Class member's claims are "identical" and that Plaintiff's claims are typical of the Class claims. Fairly read, the Petition sets forth Plaintiff and Class claims including, among other things, that BP knowingly breached its

obligation to pay interest under the Oklahoma Production Revenue Standards Act ("PRSA") on payments Plaintiff alleges were untimely paid as part of an "overarching scheme to avoid its obligations under Oklahoma law." In addition, Plaintiff asserts claims for breach of operator's duty to investigate ownership and timely pay owners in oil and gas wells it operates, fraud, and equitable claims for accounting, disgorgement, and injunctive relief. Plaintiff seeks the following relief on behalf of itself and the Class: (a) actual damages; (b) punitive damages; (c) pre-judgment interest; (d) a permanent injunction ordering BP to pay interest on future untimely payments; (e) an order certifying the Class; (f) an order requiring BP to provide Plaintiff and the Class with an accounting; (g) an order requiring BP to "disgorge themselves of the ill-gotten gains it has obtained through the unlawful use of interest owed to Plaintiff and the Class;" (h) an order requiring BP "to pay Class attorneys' fees and litigation costs as provided by [the PRSA];" and (i) "[s]uch costs and other relief as th[e] Court deems appropriate." (*See* Plaintiff's Original Petition (attached as Exhibit 1).)

BP denies that it is liable to Plaintiff or the proposed Class for all of the alleged conduct, statutory interest, compensatory damages, punitive damages, attorneys' fees, expert fees, disgorgement, accounting, or injunctive relief requested by Plaintiff or the proposed Class. BP also denies that this case is appropriate for class certification.

The statements in this Notice of Removal are made based on the allegations in Plaintiff's Petition and other information available to BP concerning the scope of those allegations, and are not to be construed as admissions in any way that BP is liable, that class certification is warranted, that Plaintiff's or the Class's claims have merit, or that Plaintiff or the Class would be entitled to damages at all. The various amounts recited in this Notice of Removal are intended only as plausible estimates of the "amount in controversy" in this class action based on

Plaintiff's averments and claims. For the reasons explained more fully below, BP is removing this action because (1) the federal district court has original jurisdiction under CAFA; and (2) there is complete diversity of citizenship under 28 U.S.C. § 1332(a) between the only two named parties--BP and Plaintiff--and the alleged amount in controversy of Plaintiff's individual claims exceeds the $75,000 jurisdictional threshold.

## II.   PROCEDURAL REQUIREMENTS

Plaintiff's Petition, *Chieftain Royalty Company v. BP America Production Company*, Case No. CJ-17-65, was filed in the District Court for Nowata County, State of Oklahoma, on December 27, 2017, and served on BP on January 3, 2018. Plaintiff's Petition is attached as Exhibit 1 to this Notice of Removal. Pursuant to 28 U.S.C. 1446(a) and Local Civil Rule 81.2, all other documents filed or served on BP in this case, including the Summons as issued, the Summons with Proof of Service which reflects that BP was served on January 3, 2018, and a copy of the docket sheet from the State Court Action are attached as Exhibits 2-4, respectively. There are no pending motions in the State Court Action.

BP files this Notice of Removal before the expiration of thirty days after January 3, 2018, the date BP was served with the Summons and Petition. *See* 28 U.S.C 1446(b); *see generally Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) ("[I]f the summons and [petition] are served together, the 30-day period for removal runs at once."); *Miller v. Waterman*, No. 13-CV-759-TCK-FHM, 2014 WL 1653245, at *1 (N.D. Okla. Apr. 24, 2014) ("The thirty-day removal period in section 1446(b)(1) only begins to run once a defendant has been served with a summons."). Further, in accordance with 28 U.S.C. § 1446(d), BP is providing written notice of the removal of this action to Plaintiff and will promptly file a copy of this Notice of Removal with the clerk of the District Court of Nowata County, State of Oklahoma.

## III.   GROUNDS FOR REMOVAL

**A.**   **CAFA authorizes removal.**

CAFA provides that federal courts have original and removal jurisdiction over certain class actions if: (1) the class has more than 100 members, (2) the parties are minimally diverse, meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant," and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See generally* 28 U.S.C. § 1332(d)(1)-(2), (5)(B); 28 U.S.C §§ 1441(a), 1453; *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014); *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1244 n.1 (10th Cir. 2012). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S.Ct. at 554. Each of the CAFA requirements is present here.

### 1.   The Class has 100 members or more.

Plaintiff defines the putative class as:

All non-excluded persons or entities who:

(1) received or, during the pendency of this action will receive, Untimely Payments from [BP] for O&G Proceeds from Oklahoma Wells and whose payments did not also include the statutory interest prescribed by the [PRSA];

(2) currently are, or become during the pendency of this action, Owners legally entitled to O&G Proceeds held by [BP] in Suspense Accounts (for reasons of unmarketable title, unknown addresses, and/or other reasons), for more than the applicable time periods prescribed in the [PRSA], without the payment by [BP] of statutory interest prescribed by the [PRSA] for the benefit of such Owners.

The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court, and (5) Owners who are entitled to O&G Proceeds from an Oklahoma Well of less than $10.00 for a calendar year pursuant to 52 O.S. §570.10 §(B)(3)(a).

(Ex. 1 ¶ 21.) Although Plaintiff gives a vague estimate as to a minimum class size, it makes no allegation as to the exact number of purported class members. *See id.* Based upon the data and information obtained from files and records in BP's possession, however, Plaintiff's proposed class, if certified, would include over 2,400 class members, which greatly exceeds the 100 members required by 28 U.S.C. § 1332(d)(5)(B)--a jurisdictional fact that is not necessarily disputed on the face of the Petition.

## 2. Minimal diversity is present here.

The minimal diversity requirement for CAFA is also easily met. Plaintiff, who seeks to represent the Class, alleges that "Plaintiff Chieftain Royalty Company is an Oklahoma corporation." (Ex. 1 ¶ 9.) Upon information and belief, Plaintiff Chieftain Royalty Company has its principal place of business in Oklahoma City, Oklahoma. Thus, BP reasonably concludes that Plaintiff is a citizen of Oklahoma--and only Oklahoma--for the purpose of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (same). Plaintiff readily concedes that BP, on the other hand, is a citizen of Delaware and Texas. (*See* Ex. 1 ¶ 11.) BP is not a citizen of Oklahoma. Simply put, the face of the Petition establishes that there is complete diversity between the only named Plaintiff and the only named Defendant as would be required under 28 U.S.C. § 1332(a). Having met the more exacting standard, it follows that there is minimal diversity as is required for jurisdiction under CAFA, *i.e.* where "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d)(2)(A).

### 3.   The amount in controversy exceeds $5 million in the aggregate.

Both under the allegations in the Petition and BP's initial good faith estimate, the amount in controversy of the proposed class plaintiffs' claims, in the aggregate, exceed $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6) ("the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"). When a state court petition does not explicitly demand the diversity threshold amount, the defendant may show the amount in controversy in one of two ways – (1) "the defendant may rely on an estimate of the potential damages from the allegations in the complaint"; or (2) "other documentation can provide the basis for determining the amount in controversy." *McPhail v. Deere & Co.*, 529 F.3d 947, 955-56 (10th Cir. 2008)[1] (emphasis added). Plaintiff is seeking statutory interest for a broad period of time, apparently for at least the twenty-six year period running from the enactment of the PRSA in 1992 to the present. Based on Plaintiff's allegations alone, the amount in controversy exceeds $5 million for actual damages alone, and this is further bolstered by Plaintiff's claims for punitive damages on behalf of each of the Class members; the cost of Plaintiff's demand for an accounting, disgorgement, and injunctive relief; Plaintiff's claim for attorney's fees; and Plaintiff's claims for "other relief" including expert witness fees. Although BP denies that it will ultimately be found liable for all of the claimed damages, the foregoing analysis comports with BP's good faith estimate of the amount in controversy, which also exceeds $5 million, exclusive of interest and costs.

---

[1] As made clear in *Dart*, the evidence or documentation need not be included in the Notice of Removal, which requires only a short and plain statement of the grounds for removal, 28 U.S.C. § 1446(a). *Dart*, 135 S. Ct. at 554.   Therefore, references in the cited authorities regarding providing evidence with the notice, or otherwise imposing a presumption against removability must be ignored. "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.*

> a.   *Relying on Plaintiff's estimate of the potential damages based on allegations in the Petition, the amount in controversy plausibly exceeds $5 million.*

Plaintiff alleges that "the amount in controversy, exclusive of attorneys' fees, litigation expenses, costs, and interest, exceeds the sum of $10,000.00," but adds that "the claims of the named Plaintiff are less than $75,000.00." (Ex. 1 ¶ 19.) Here, BP estimates from its internal records that the number of potential class members will exceed 2,400, excluding those expressly excluded from the class definition. Therefore, utilizing the 2,400 class members, and applying the Plaintiff's allegation that the amount of its individual claims exceed $10,000.00 and its allegation that the "Plaintiff's claims are typical of the Class' claims because the claims are identical for each Class member", BP reasonably estimates that the amount in controversy exceeds $5,000,000 (2,400 x $10,000 = $24,000,000).

The fact that the alleged damages to Plaintiff and the potential Class consist of interest purportedly due and owing under the PRSA on payments that have already been made but which were allegedly paid untimely does not mean that Plaintiff's damages allegations concerning interest under the PRSA should be excluded from the amount in controversy. Here, the pre-judgment interest is *not* an incident to the underlying amount in controversy which must be excluded. *See Whisenant v. Sheridan Prod. Co., LLC*, 627 F. App'x 706, 709 (10th Cir. 2015) (where plaintiffs were seeking damages for underpayment of royalties, the interest that would accrue as incident to those damages under the PRSA could not be considered in determining the amount in controversy); *and State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) ("[I]nterest is not counted if it was <u>an incident arising solely by virtue of a delay in payment of the underlying amount in controversy</u>." (emphasis added) (internal quotation marks omitted)). Rather, it *is* the amount in controversy.

In this case, Plaintiff seeks statutory interest payments <u>not</u> as an incident to some underlying amount in dispute; the PRSA interest being sought by Plaintiff on behalf of itself and the Class <u>are the alleged compensatory damages</u>. Where the claim for interest is no longer a mere incident of, or an accessory to the principal indebtedness, but becomes the principal obligation asserted, that interest may be considered in determining the amount in controversy. *See Brady v. UBS Fin. Servs., Inc.*, 696 F. Supp. 2d 1263, 1270 (N.D. Okla. 2010) (recognizing that "the Supreme Court has held that interest may be included when the demand for interest 'is no longer a mere incident of the principal indebtedness . . . . but becomes really a principal obligation.'" (quoting *Edwards v. Bates County*, 163 U.S. 269, 272 (1896))). Accordingly, the alleged statutory interest payments sought by Plaintiff on behalf of itself and the Class is the principal obligation for purposes of determining whether the $5 million jurisdictional threshold has been met.

Furthermore, as noted above, Plaintiff is seeking statutory interest for a broad period of time, apparently for at least the twenty-six year period running from the enactment of the PRSA in 1992 to the present. A PRSA interest claim on those alleged untimely payments, as claimed by Plaintiff, involves an amount in controversy well in excess of $5 million. Plaintiff also asks this Court to award permanent injunctive relief for the indefinite future that would "order[] Defendant to pay interest required by law when Defendant makes *future* Untimely Payments to Plaintiff and the Class." (Ex. 1 ¶ 73) (emphasis added). This request for permanent injunctive relief, which would order BP to make interest payments on untimely payments from now until eternity, makes the amount in controversy essentially infinite--which further renders the amount in controversy in excess of $5 million.

b.      **BP's good faith reliance on documentation within its possession and control, which it regularly keeps in the regular course of business, indicates the amount in controversy plausibly exceeds $5 million.**

Aside from the estimates of the amount in controversy in the Plaintiff's Petition, BP has determined from a review of internal records that are regularly kept as part of its regular course of business that the amount in controversy exceeds the $5 million jurisdictional threshold for CAFA.

c.      **Considering only the claim for punitive damages by the Plaintiff and the Class, the amount in controversy exceeds $5 million.**

Even assuming, *arguendo*, Plaintiff's claim for statutory interest as compensatory damages were not sufficient to satisfy the $5 million CAFA jurisdictional amount, which is not the case here, the Court would then also need to consider Plaintiff's other claims, including those for punitive damages. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) ("[P]unitive damages may be considered in determining the requisite jurisdictional amount." (quoting *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (internal quotation marks omitted))). BP disputes that either Plaintiff or the class members have a valid claim for punitive damages, but a defendant can remove on the basis of a claim for punitive damages by establishing "'jurisdictional *facts* that ma[ke] it *possible*' that punitive damages are in play." *Frederick*, 683 F.3d at 1248 (quoting *McPhail*, 529 F.3d at 955) (emphasis supplied by the court). "The defendant does not have to prove that the plaintiff is more likely than not to ultimately recover punitive damages, but merely that: (1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000." *Frederick*, 683 F.3d at 1248.

Section 9.1(A) of title 23 of the Oklahoma Statutes provides that, "[i]n an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant . . . ." Okla. Stat. tit. 23, § 9.1(A). If the jury were to find by clear and convincing evidence that BP acted with "reckless disregard for the rights of others," the jury would be permitted to award punitive damages of $100,000 or the amount of actual damages, whichever is greater. *See* Okla. Stat. tit. 23, § 9.1(B). If the jury were to find by clear and convincing evidence that BP acted "intentionally and with malice toward others," the jury would be permitted to award punitive damages in an amount not to exceed the greater of (a) $500,000, or (b) twice the amount of actual damages. *See* Okla. Stat. tit. 23, § 9.1(C).[2] Of course, any award of punitive damages would be subject to applicable constitutional limitations. Again, BP disputes that this is the sort of case that would warrant punitive damages, but Plaintiff's allegation that punitive damages are warranted makes an award of punitive damages at least a possibility under Oklahoma law.

The Petition is rife with allegations implicating Okla. Stat. tit. 23, § 9.1. Plaintiff claims that:

- "[BP] is well aware of its obligation to pay the required interest on Untimely Payments . . . [but] consistently ignores [this] obligation . . . [and] on information and belief . . . routinely delays payment . . . as part of an overarching scheme to avoid its obligations under Oklahoma law." (Ex. 1 ¶ 6.)

- "[BP's conduct is] part of an ongoing scheme to avoid paying money clearly owed under Oklahoma law." (Ex. 1 ¶ 33.)

---

[2] In analyzing the potential for punitive damages under Okla. Stat. tit. 23, § 9.1(B)-(C), BP does not concede that either subsection would apply to this litigation, nor that Plaintiff and/or the Class could adduce the type of clear and convincing evidence that would permit the jury to award an amount for punitive damages under either subsection of the statute, nor that Plaintiff and/or the Class could overcome the bar against punitive damages in the Energy Litigation Reform Act ("ELRA").

- "[BP] profited from [its] deliberate refusal to pay statutory interest to Plaintiff and the Class." (Ex. 1 ¶ 36.)

- "[BP's] failure to pay interest owing on its Untimely Payments . . . was knowing and intentional and/or the result of [its] gross negligence." (Ex. 1 ¶ 48.)

- "[BP's conduct] is a result of [its] actual knowing and willful intent: (a) to deceive the members of the Class, and/or (b) to deprive such interest from persons [it] knows, or is aware, are legally entitled thereto. Thus, [BP] should be required to pay punitive damages as a method of punishing [it] and setting an example for others." (Ex. 1 ¶¶ 54, 61.)

- "[BP] knowingly and intentionally took on duties associated with such interests, including the duty to pay O&G Proceeds to Owners in accordance with Oklahoma law . . . . [But BP] took on such duties with the intent to deceive [Plaintiff and the Class] . . . [s]pecifically, [BP] knew it owed interest on Untimely Payments, but knowingly and intentionally suppressed the fact that interest was owed to Plaintiff and the Class members. Further, [BP] intended to avoid its obligation to pay the statutorily mandated interest and only pay when an Owner specifically requests payment of the statutory interest." (Ex. 1 ¶¶ 57-58.)

- "[BP] has . . . engage[d] in a fraudulent scheme with regard to its willful and intentional [conduct]." (Ex. 1 ¶ 71.)

Given the number of potential Class members and Plaintiff's allegations of actual damages as described above, it is readily apparent that Plaintiff's punitive damage claim alone involves an amount in controversy which exceeds $5,000,000.

> **d.** ***The claims by Plaintiff and the Class for an "accounting" and "disgorgement" should also be considered in determining the amount in controversy.***

Plaintiff also seeks equitable relief on behalf of itself and the Class in the form of an "accounting," which would direct BP to provide an accounting to Plaintiff and Class members which discloses: (a) the amount of accrued interest that Plaintiff and each Class member should have been paid by BP, and (b) the method for calculating such amounts. (Ex. 1 ¶¶ 63-64.) Presumably, such an accounting would also seek a demonstration of the cause(s) for and circumstances surrounding the suspense of individual owner's payments. Plaintiff further seeks

11

equitable relief on behalf of itself and the Class in the form of disgorgement, requesting the Court to order BP "to disgorge itself of any benefits derived from its improper and unlawful use of Plaintiff's and the Class' interest payments, including interest that has accrued on such interest since the time in which [BP] made the Disputed Payments to Plaintiff and the Class." (Ex. 1 ¶ 67.) Again, although BP denies that Plaintiff and/or the Class are entitled to an accounting or disgorgement, or any other form of equitable relief, the Court must consider these claims in determining the amount in controversy.

When a plaintiff seeks equitable relief such as an accounting, the Tenth Circuit has held that the "amount in controversy" can include the cost of performing the relief, if granted. *See Lovell v. State Farm Mt. Auto Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (when a plaintiff seeks equitable relief, the "either viewpoint rule" applies, which considers "either the value to the plaintiff or the cost to defendant . . . as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum" (citing *Justice v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir. 1991))). Thus, when a plaintiff seeks disgorgement, the amount to be disgorged from the defendant can properly be considered as part of the amount in controversy. *See Cox v. Allstate Ins. Co.*, No. CIV-07-1449-L, 2008 WL 2167027, at *3 (W.D. Okla. May 22, 2008) (holding that amount to be disgorged from defendant was properly considered under CAFA for purposes of establishing $5 million jurisdictional threshold).

Given the large number of potential Class members and the fact that there are many different reasons why a payment to an interest owner might be suspended, BP estimates that the cost of the accounting sought by Plaintiffs would significantly increase the amount in controversy. Moreover, because Plaintiff alleges that it and the Class are entitled to disgorge "any benefits" BP has received from its alleged misconduct, such sum should also be added to

the amount in controversy. Thus, the accounting and disgorgement--especially when added to the other relief Plaintiff and the Class seek--demonstrate that the amount in controversy is well in excess of $5 million.

> **e.** **The claims by Plaintiff and the Class for attorney's fees should also be considered in determining the amount in controversy.**

When an award of attorney's fees is provided by statute to a prevailing claimant, such amount is included in the amount in controversy. *See Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("Because the [statute] requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees . . . should have been considered in determining whether . . . the jurisdictional amount [was satisfied]."); Wright & Miller, 14 AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.) ("[A]ttorney's fees are a part of the matter in controversy for subject matter jurisdiction purposes when they are provided for by contract or by state statute." (citing, among many other cases, *Miera v. Dairyland Ins. Co.* 143 F.3d 1337 (10th Cir. 1998))). Moreover, "[t]he Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship." *Miera*, 143 F.3d at 1340 (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)).

Here, Plaintiff seeks "attorneys' fees and litigation costs as provided by statute." (Ex. 1 at 13, Prayer For Relief ¶ 6.) The statute--*i.e.* the PRSA--authorizes a prevailing party to recover "reasonable attorney and expert witness fees." Okla. Stat. tit. 52, § 570.14(C). Given the nature of Plaintiff's class claims herein, and considering awards in other similar cases, the amount of Plaintiff's claim for attorney's fees and expert witness fees are reasonably estimated to exceed several million dollars.

**B.**   **Removal is proper because there is complete diversity between Plaintiff and BP with respect to Plaintiff's individual claim and the amount in controversy on Plaintiff's individual claims exceeds $75,000.**

Removal of the case is also proper under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1446 because there is complete diversity of citizenship between the only named Plaintiff (Chieftain Royalty Company) and the only named Defendant (BP), and the amount in controversy exceeds $75,000 with respect to the Plaintiff's aggregated claims. BP is a citizen of Delaware and Texas and Plaintiff is a citizen of Oklahoma. (*See* Ex. 1 ¶¶ 9, 11.)

The Petition states that "the amount in controversy, exclusive of attorneys' fees, litigation expenses, costs, and interest, exceeds the sum of $10,000.00 . . . . [but that] the claims of the named Plaintiff are less than $75,000.00." (Ex. 1 ¶ 19.) Thus, Plaintiff's pleading is fairly read to allege that it sustained damages of between $10,000 and $75,000. Because Plaintiff's individual claim for attorneys' fees will likely amount to more than $65,000, it is plain from the face of Plaintiff's own pleading that the amount in controversy for its individual aggregated claims, exclusive of costs and interest, exceeds $75,000. When the Plaintiff's claims for equitable relief (*e.g.* accounting, disgorgement, permanent injunction) and punitive damages are also considered, the amount in controversy on Plaintiff's individual claims further exceeds $75,000.

As long as there is complete diversity among the named parties and one named plaintiff in the class action and the $75,000 amount-in-controversy requirement is satisfied, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims of the other plaintiffs, including unnamed Class members in the same case or controversy--even if the other unnamed Class members have claims for less than $75,000. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 559 (2005). Accordingly, even if this Court did not have removal jurisdiction under CAFA, it would have removal jurisdiction under 28 U.S.C. § 1332(a).

## CONCLUSION & PRAYER

For the foregoing reasons, and based on the allegations in Plaintiff's Original Petition, as fairly construed, and other available information, BP submits that this Court has removal jurisdiction over this action under CAFA and traditional diversity jurisdiction principals and that this matter is properly removed to federal court. *See* 28 U.S.C. §§ 1332(a), 1332(d), 1446, and 1453. BP also requests all such other relief to which it is entitled.

Respectfully submitted,

L. MARK WALKER, OBA #10508
HARVEY D. ELLIS, OBA #2694
MICAH LEE ADKISON, OBA # 33107
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
mark.walker@crowedunlevy.com
harvey.ellis@crowedunlevy.com
micah.adkison@crowedunlevy.com

-AND-

SUSAN E. HUNTSMAN, OBA #18401
CROWE & DUNLEVY
A Professional Corporation
321 S. Boston Ave., Ste. 500
Tulsa, Oklahoma 74103
(918) 592-9800
(918) 592-9801 (Facsimile)
susan.huntsman@crowedunlevy.com

-AND-

MARK D. CHRISTIANSEN, OBA #1675
MCAFEE & TAFT
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue

15

Oklahoma City, Oklahoma 73102
Telephone: (405) 552-2233
Facsimile: (405) 228-7435
mark.christiansen@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT BP
AMERICA PRODUCTION COMPANY**

## CERTIFICATE OF SERVICE

I certify that on the same date this Notice of Removal was filed in the United States District Court for the Northern District of Oklahoma that a true and correct copy of said Notice of Removal was served by mailing, postage prepaid, to the following attorneys of record:

Robert N. Barnes
Emily Nash Kitch
Robert N. Barnes, P.C.
208 NW 60th Street
Oklahoma City, Oklahoma 73118

and further that a copy of said Notice of Removal was delivered to the Nowata County Court Clerk for filing, on the 23rd day of January, 2018.

L. Mark Walker by seh

3291961.1

FILED
COURT CLERK, NOWATA CO, OK

DEC 2 7 2017

APRIL FRAUENBERGER
BY:

IN THE DISTRICT COURT OF NOWATA COUNTY
STATE OF OKLAHOMA

CHIEFTAIN ROYALTY COMPANY )
)
    Plaintiff, )
)
v. )    Case No. CJ-17-65
)
BP AMERICA PRODUCTION COMPANY, )
)
    Defendant. )

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, CHIEFTAIN ROYALTY COMPANY, for itself and all others similarly situated,

files this Original Petition (the "Petition") and hereby alleges and states as follows in support of

the claims asserted against BP America Production Company, ("Defendant"):

### SUMMARY OF THE ACTION

1.    This class action suit concerns Defendant's willful and ongoing violations of

Oklahoma law related to payment of statutory interest on late payments of oil and gas production

proceeds ("O&G Proceeds") to persons with a legal interest in the mineral acreage under a well

which entitles such person(s) (*i.e.*, the "Owner") to payments of O&G Proceeds.

2.    Plaintiff is an Owner in one or more oil and/or gas wells in Oklahoma in which

Defendant has incurred an obligation to pay O&G Proceeds (the "Oklahoma Wells"). Specifically,

Plaintiff is an Owner in an Oklahoma Well, the Kathleen Anderson #6, which is located in Section

19-5N-17E, Pittsburg County, Oklahoma. Defendant is the operator(s) of the Well and are

obligated to pay O&G Proceeds to Plaintiff within the time periods prescribed by statute and failing

the same, to additionally pay interest at the rate prescribed by statute.

3.    The oil and gas industry has historically been rife with abuse by lessees and

operators who routinely delay and/or suspend payments to Owners to, among other things, obtain

**EXHIBIT 1**

interest free loans at the expense of Owners. Because of the lessee's or operator's control over the relationship, they are able to easily and successfully employ and benefit from such schemes, to the detriment of Owners.

4.      Oklahoma law attempts to redress and/or prevent such abuses by requiring companies, including Defendant, to pay interest on "proceeds from the sale of oil or gas production or some portion of such proceeds [that] are not paid prior to the end of the applicable time periods provided" by statute ("Untimely Payments"). 52 O.S. §570.10(D); *see generally*, 52 O.S. §570, *et. seq.* (the "Production Revenue Standards Act" or the "Act"). Further, the Act states that "All proceeds from the sale of production shall be regarded as separate and distinct from all other funds of any person receiving or holding the same until such time as such proceeds are paid to the owners legally entitled thereto." *Id.* at §570.10(A).

5.      The Act gives Owners a uniform, absolute right to interest on Untimely Payments, regardless of whether such payments were previously suspended to address title marketability issues, or any other reason such payments were not made within the time limits required by the Act. The plain language of the Act imposes an obligation to include interest on Untimely Payments. Compliance with this statutory requirement is not optional and does not require a prior written or oral demand by Owners.

6.      Defendant is well aware of its obligation to pay the required interest on Untimely Payments. Nevertheless, in violation of Oklahoma law, Defendant consistently ignores its obligation to pay interest on Untimely Payments made to Plaintiff and other owners. Indeed, on information and belief, Defendant routinely delays payment of production proceeds and denies Owners the interest payments to which they are entitled as part of an overarching scheme to avoid its obligations under Oklahoma law.

7.      Accordingly, Plaintiff files this class action lawsuit against Defendant to obtain

relief on behalf of all similarly situated Owners who received or were entitled to receive any Untimely Payments for which Defendant did not include payment of interest as required by the Act.

8.      Plaintiff files this class action lawsuit against Defendant for fraud and breach of its statutory obligation to pay O&G Proceeds and interest.  Additionally, Plaintiff seeks an accounting, disgorgement, and injunctive relief against Defendant.

## PARTIES

9.      Plaintiff Chieftain Royalty Company is an Oklahoma corporation.

10.     Plaintiff is an Owner in Oklahoma Wells and is entitled to payment of O&G Proceeds therefrom.

11.     Defendant BP is a foreign corporation organized under Delaware law with its principal place of business in Texas.

12.     At all times relevant to the claims asserted herein, Defendant was producing owner(s) or operator(s) of oil and/or gas wells in the State of Oklahoma.  Defendant is obligated to pay O&G Proceeds to Plaintiff and the Owners in the putative class within the time periods prescribed by the Act and failing that, to pay interest at the rates prescribed by the Act.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction to hear these matters pursuant to 52 O.S. § 570.14 (A).

17.     This Court has jurisdiction over Defendant because Defendant is a foreign limited partnership who regularly transacts business and owns property in Oklahoma, including Nowata County, Oklahoma.

18.     Venue is proper in this county pursuant to 12 O.S. §137 because Defendant BP America Production Company is a foreign corporation that owns oil and gas mineral interest in Nowata County, Oklahoma.

3

19.     Jurisdiction is properly laid in the District Court of Nowata County, Oklahoma because the amount in controversy, exclusive of attorneys' fees, litigation expenses, costs, and interest, exceeds the sum of $10,000.00. However, the claims of the named Plaintiff are less than $75,000.00.

20.     When examining the totality of the circumstances, the District Court of Nowata County is the proper forum to adjudicate the claims of Plaintiff and the Class as Plaintiff's claims do not involve matters of national or interstate interest, Plaintiff's claims will be governed by the laws of the State of Oklahoma, the action was brought in Nowata County which has a distinct nexus with the class members, the alleged harm, and the Defendant, and the number of Class members who are citizens of the State of Oklahoma is believed to be substantially larger than the number of citizens from any other State.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as the representative of a Class pursuant to 12 O.S. §2023(B)(2) and §2023(B)(3). The Class is comprised of:

> All non-excluded persons or entities who:
> (1) received or, during the pendency of this action will receive, Untimely Payments from Defendant for O&G Proceeds from Oklahoma Wells and whose payments did not also include the statutory interest prescribed by the Act;
> (2) currently are, or become during the pendency of this action, Owners legally entitled to O&G Proceeds held by Defendant in Suspense Accounts (for reasons of unmarketable title, unknown addresses, and/or other reasons), for more than the applicable time periods prescribed in the Act, without the payment by Defendant of statutory interest prescribed by the Act for the benefit of such Owners.

> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court, and (5) Owners who are entitled to O&G Proceeds from an Oklahoma Well of less than $10.00 for a calendar year pursuant to 52 O.S. §570.10

4

§(B)(3)(a).

21.     Upon information and belief, absent Class members entitled to interest under the Act owing from Defendant's Untimely Payments are estimated to be more than fifty (50) and total damages owing to such class members are unknown to Plaintiff at this time.  Therefore, the Class is so numerous that joinder of all members is impracticable.

22.     The questions of fact and law common to the Class, include:

a.   Whether Plaintiff and the Class own legal interests in the Oklahoma Wells upon which Defendant has an obligation to pay O&G Proceeds;

b.   Whether, under Oklahoma law, Defendant owed interest to Plaintiff and the Class on any Untimely Payments, either received or not yet received;

c.   Whether Defendant had a duty to promptly investigate whether Plaintiff and the Class were owed interest and, if so, to properly pay the interest owed to the Plaintiff and the Class;

d.   Whether Defendant's failure to pay interest to Plaintiff and the Class on any Untimely Payments, either received or not yet received, constitutes a violation of the Act;

e.   Whether Defendant defrauded Plaintiff and the Class by knowingly withholding statutory interest; and

f.   Whether Defendant is obligated to pay interest on future Untimely Payments, either received or not yet received.

23.     Plaintiff's claims are typical of the Class' claims because the claims are identical for each Class member.

24.     Defendant treated Plaintiff and the Class in the same way by failing to pay the required interest on Untimely Payments.

25.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests do not conflict with the interests of the Class.  Plaintiff is represented by counsel who are skilled and experienced in oil and gas matters, accounting, and complex civil litigation, including oil and gas royalty class actions.

26.     The averments of fact and questions of law herein, which are common to the members of the Class, predominate over any questions affecting only individual members.

27.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.  The questions of law and fact are so uniform across the Class that there is no reason why individual members of the Class would want to control the prosecution of their own actions, at their own expense;

b.  To Plaintiff's knowledge, there is no pending litigation by any individual Class member, with the same scope of Class membership sought herein, against Defendant relating to Defendant's failure to pay interest owing on the Untimely Payments of O&G Proceeds as required by law;

c.  The interests of all parties and the judiciary in resolving these matters in one forum without the need for multiplicity of actions is great;

d.  The difficulties in managing this case as a class action will be slight in relation to the personal benefits to be achieved on behalf of each and every Class member, and not just those who can afford to bring their own actions; and

e.  Absent a class action, Plaintiff and the Class members may never discover the wrongful acts of Defendant, the extent of their respective financial losses, or the financial benefit they are unwittingly providing to Defendant.

**GENERAL ALLEGATIONS AND FACTUAL BACKGROUND**

28.     The allegations set forth above are incorporated herein by reference.

29.     Defendant operates (and/or Defendant owns a working interest in) numerous oil and/or gas wells throughout Oklahoma.  Defendant owes payments of O&G Proceeds to Plaintiff and Class members as a result of the mineral production from such wells.

30.     Plaintiff and the Class are entitled to rely on the Defendant to act as reasonably prudent operators and to diligently investigate their right to receive interest on Untimely Payments; and if its investigation concludes that interest is owed pursuant to the Act, to promptly pay the Plaintiff and the Class such interest.

31.     Plaintiff and Class members are entitled to payment of O&G Proceeds from

6

Defendant and, pursuant to the Act, are further entitled to interest from Defendant(s) on any Untimely Payments, either received or not yet received.

32.     Plaintiff and Class members placed their trust, confidence and reliance in Defendant to pay them the O&G Proceeds to which they were entitled, including any interest owed thereon. Defendant had superior access to information regarding O&G Proceeds and the amounts it owed to Plaintiff and the Class, including interest, on Untimely Payments. The Plaintiffs and the Class were unaware that Defendant had and continued to breach its duty to pay interest due under the Act.

33.     When Defendant made Untimely Payments to Plaintiff and Class Members, or held O&G Proceeds in Suspense Accounts for more than the interest free period allowed by law, Defendant failed to pay the interest owed pursuant to the Act. Indeed, on information and belief, Defendant's failure to pay the statutorily required interest on Untimely Payments continues to this day as part of an ongoing scheme to avoid paying money clearly owed under Oklahoma law.

34.     Based on information and belief, Plaintiff further alleges that Defendant does not make reasonable and consistent efforts to locate and pay O&G Proceeds to Owners. Instead, Defendant keeps the O&G Proceeds in Suspense Accounts and untimely pay the O&G Proceeds to various states as abandoned/unclaimed property without also paying the statutory interest owed under the Act.

35.     Defendant is not permitted to take advantage of their relationship with Plaintiff and Class members and realize unauthorized benefits or profits at the expense of Plaintiff and the Class. Defendant has used its position as the holder of Plaintiff's and the Class' O&G Proceeds to avoid its statutory obligation to pay the statutory interest due to Plaintiff and the Class in the event of Untimely Payments. As such, Defendant has improperly treated Plaintiff's and the Class' O&G Proceeds as an interest-free loan without their consent.

7

36.     Upon information and belief, Defendant ignored its obligation under the Act to regard the O&G Proceeds it owed to Plaintiff and the Class as separate and distinct from Defendant's other cash assets.  Rather, these proceeds were commingled with Defendant's other cash assets.  As such, Defendant improperly, unfairly, and illegally profited from their deliberate refusal to pay statutory interest to Plaintiff and the Class.

37.     In short, Defendant blatantly ignored Oklahoma law regarding the payment of interest on Untimely Payments.  Further, Defendant did not hold the O&G Proceeds for the benefit of the owners legally entitled thereto (*i.e.* Plaintiff and the Class) and, instead, held the O&G Proceeds for their own benefit.  Defendant has abused its position with Plaintiff and the Class.

38.     Plaintiff and the Class have been damaged by Defendant's unlawful acts and omissions.

39.     Defendant's wrongdoing—which is in clear violation of Oklahoma law—is ongoing and continues to this day.

40.     To the extent Defendant relies on any statute of limitation as a defense, Plaintiff and the putative Class plead that, under the facts at issue here, the doctrines of equitable estoppel or tolling, open account, the discovery rule and/or other defenses apply to toll the running of any statute of limitations.

### CAUSES OF ACTION

### I.     BREACH OF STATUTORY DUTY TO PAY O&G PROCEEDS AND INTEREST

41.     The allegations set forth above are incorporated herein by reference.

42.     Plaintiff brings this cause of action on behalf of itself and the Class.

43.     Plaintiff and the Class were legally entitled to the payment of O&G Proceeds from Defendant for wells operated by Defendant in Oklahoma, or in which Defendant otherwise held O&G Proceeds.

8

44.     Section 570.10 of the Act requires Defendant to hold O&G Proceeds from the sale of oil and/or gas production for the benefit of the Owners legally entitled thereto.

45.     Section 570.10 of the Act requires payment of O&G Proceeds to be made in a timely manner according to the applicable time periods set forth in the Act.

45.     If the holder of any O&G Proceeds subject to the Act fails, for any reason, to make timely payments to persons entitled to receive such O&G Proceeds, the holder must pay interest on such O&G Proceeds at the statutory rate.

46.     Defendant held O&G Proceeds belonging to Plaintiff and the Class and Defendant failed to timely pay O&G Proceeds owing to Plaintiff and the Class as provided by the Act.

47.     In violation of the Act, when Defendant ultimately made Untimely Payments to Plaintiff and the Class, or held O&G Proceeds in Suspense Accounts or paid O&G Proceeds to various states as abandoned/unclaimed property, Defendant did not pay the interest owing on the Untimely Payments.

48.     Defendant's failure to pay interest owing on its Untimely Payments of O&G Proceeds was knowing and intentional and/or the result of Defendant's gross negligence.

49.     Defendant's failure to pay interest owing on its Untimely Payments of O&G Proceeds has caused Plaintiff and the Class to suffer harm.

**II.     BREACH OF DUTY TO INVESTIGATE AND PAY**

50.     The allegations set forth above are incorporated herein by reference.

51.     Defendant has a duty to diligently investigate the identity and location of Owners and to timely pay O&G Proceeds and failing that, to pay statutory interest.

52.     Defendant breached this duty when they failed to diligently investigate the rights of the Plaintiff and the Class to receive interest on Untimely Payments and pay such interest to the Plaintiff and the Class when owed.

9

53.     Plaintiff and the Class have been damaged by Defendant's actions and violation of the law.

54.     Defendant's failure to diligently investigate the rights of the Plaintiff and the Class to receive interest on Untimely Payments and pay such interest to the Plaintiff and the Class is a result of Defendant's actual knowing and willful intent: (a) to deceive the members of the Class, and/or (b) to deprive such interest from persons the Defendant knows, or is aware, are legally entitled thereto.  Thus, Defendant should be required to pay punitive damages as a method of punishing Defendant and setting an example for others.

## III.     FRAUD

55.     The allegations set forth above are incorporated herein by reference.

56.     Plaintiff brings this cause of action on behalf of itself and the Class.

57.     Defendant operates or has operated numerous oil and/or gas wells throughout Oklahoma.  Thus, Defendant knowingly and intentionally took on the duties associated with such interests, including the duty to pay O&G Proceeds to Owners in accordance with Oklahoma law.

58.     Defendant, however, took on such duties with the intent to deceive Owners and not pay the full O&G Proceeds owed.  Specifically, Defendant knew it owed interest on Untimely Payments, but knowingly and intentionally suppressed the fact that interest was owed to Plaintiff and the Class members.  Further, Defendant intended to avoid its obligation to pay the statutorily mandated interest and only pay when an Owner specifically requests payment of the statutory interest.

59.     Plaintiff and the Class relied on and trusted Defendant to pay them the full O&G Proceeds to which they were entitled under Oklahoma law.

60.     Plaintiff and the Class have been damaged by Defendant's actions and violations of law.

10

61.     Defendant's failure to pay the interest it owes to Plaintiff and the Class is a result of Defendant's actual knowing and willful intent: (a) to deceive the members of the Class, and/or (b) to deprive such interest from persons the Defendant knows, or is aware, are legally entitled thereto.  Thus, Defendant should be required to pay punitive damages as a method of punishing Defendant and setting an example for others.

## IV.     ACCOUNTING AND DISGORGEMENT

62.     The allegations set forth above are incorporated herein by reference.

63.     Plaintiff requests an accounting on behalf of itself and the Class.

64.     Plaintiff requests the Court enter an order directing Defendant to provide an accounting to Plaintiff and Class members which discloses: (a) the amount of accrued interest that Plaintiff and each Class member should have been paid by Defendant, and (b) the method for calculating such amounts.

65.     Defendant's payment of interest owed to Plaintiff and the Class does not provide an adequate legal remedy for the violations committed by Defendant because it will not deprive Defendant of the ill-gotten gains it has obtained through its unlawful behavior.

66.     The principles of equity and good conscience do not permit Defendant to retain the benefits derived from their improper and unlawful use of interest owed on Untimely Payments made to Plaintiff and the Class.

67.     Therefore, Plaintiff requests the Court enter an order directing Defendant to disgorge itself of any benefits derived from its improper and unlawful use of Plaintiff's and the Class' interest payments, including interest that has accrued on such interest since the time in which Defendant made the Disputed Payments to Plaintiff and the Class.

## V.     INJUNCTIVE RELIEF

68.     The allegations set forth above are incorporated herein by reference.

11

69.     Plaintiff seeks injunctive relief on behalf of itself and the Class.

70.     Unless enjoined by this Court, Defendant will continue its pattern and practice of failing to pay interest owed on Untimely Payments to Plaintiff and the Class members.

71.     Defendant has utilized its superior knowledge and control of information regarding Plaintiff's and the Class' entitlement to interest on Untimely Payments to engage in a fraudulent scheme with regard to its willful and intentional failure to pay such interest. As such, Defendant's wrongdoing is ongoing, and injuries in the future by Plaintiff and the Class are irreparable in that the vast majority of Class members are unaware of their right to be paid interest.

72.     There is no adequate and complete remedy at law for continuing violations of the Act by Defendant.

73.     Plaintiff requests the Court enter a permanent injunction, ordering Defendant to pay interest as required by law when Defendant makes future Untimely Payments to Plaintiff and the Class.

74.     Defendant will not suffer any harm as a result of granting the Class members' request for injunctive relief because Defendant's compliance with the Court's order will be consistent with Defendant's legal obligations and duties to Plaintiff and the Class.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff seeks:

1.     An order certifying and allowing this case to proceed as a class action with Plaintiff as class representative and the undersigned counsel as class counsel;

2.     An order requiring Defendant to pay Plaintiff and Class members actual damages to fully compensate them for losses sustained as a direct, proximate, and/or producing cause of Defendant's breaches and/or unlawful conduct including, without limitation, the compounded interest on Untimely Payments as required by law;

12

3.      An order requiring Defendant to provide Plaintiff and the Class with an accounting;

4.      An order requiring Defendant to disgorge themselves of the ill-gotten gains it has obtained through the unlawful use of interest owed to Plaintiff and the Class;

5.      An order requiring Defendant to pay interest in the future, as required by law, to Plaintiff and the Class;

6.      An order requiring Defendant to pay the Class attorneys' fees and litigation costs as provided by statute; and

7.      Such costs and other relief as this Court deems appropriate.

ATTORNEYS' LIEN CLAIMED
JURY TRIAL DEMANDED

DATED: December 20, 2017

_____
Robert N. Barnes, OBA No. 537
Emily Nash Kitch, OBA No. 22244
ROBERT N. BARNES, P.C.
208 NW 60th ST
Oklahoma City, OK  73118
Telephone: (405) 843-0363
Facsimile: (405) 832-1007
rbarnes@barneslewis.com
ekitch@barneslewis.com

**ATTORNEYS FOR PLAINTIFF**

13

## IN THE DISTRICT COURT OF NOWATA COUNTY
## STATE OF OKLAHOMA

CHIEFTAIN ROYALTY COMPANY  )
            )
   Plaintiff,       )
            )
v.            )  Case No. _CF-2017- 65_
            )
            )
BP AMERICA PRODUCTION COMPANY, )
            )
   Defendant.      )

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**  **BP America Production Company**
              The Corporation Company
              1833 S Morgan Rd
              Oklahoma City, 73128

   You have been sued by the above named Plaintiff, and you are directed to file a written Response to the attached Petition in the office of the Court Clerk in the County named above **within twenty (20) days** after service of this Summons upon you, exclusive of the day of service.  Within the same time, a copy of your Response must be delivered or mailed to the attorney for the Plaintiff.

**Unless you respond to the Petition within the time stated, judgment will be rendered against you for the relief demanded in the Petition, together with the costs of the action.**

   Issued this _27ᵗʰ_ day of _December_, 2017.

              APRIL FRAUENBERGER, COURT CLERK

[SEAL]

              By ~~Deputy~~ Court Clerk

_____
Robert N. Barnes, OBA No. 537
Emily Nash Kitch, OBA No. 22244
ROBERT N. BARNES, P.C.
208 NW 60ᵗʰ ST
Oklahoma City, OK  73118
Telephone: (405) 843-0363
Facsimile: (405) 832-1007
Attorneys for Plaintiff

**YOU MAY SEEK THE ADVICE OF ANY ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR RESPONSE.  SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT A RESPONSE MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

**EXHIBIT 2**

( ORIGINAL )

IN THE DISTRICT COURT OF NOWATA COUNTY
STATE OF OKLAHOMA

```
FILED
COURT CLERK, NOWATA CO, OK
JAN 1 6 2018
APRIL FRAUENBERGER
BY
```

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _CF-2017-65_ |
| | ) | |
| | ) | |
| BP AMERICA PRODUCTION COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:     **BP America Production Company**
The Corporation Company
1833 S Morgan Rd
Oklahoma City, 73128

You have been sued by the above named Plaintiff, and you are directed to file a written Response to the attached Petition in the office of the Court Clerk in the County named above **within twenty (20) days** after service of this Summons upon you, exclusive of the day of service. Within the same time, a copy of your Response must be delivered or mailed to the attorney for the Plaintiff.

**Unless you respond to the Petition within the time stated, judgment will be rendered against you for the relief demanded in the Petition, together with the costs of the action.**

Issued this _27th_ day of _December_, 2017.

[SEAL]

APRIL FRAUENBERGER, COURT CLERK

By _____
~~Deputy~~ Court Clerk

Robert N. Barnes, OBA No. 537
Emily Nash Kitch, OBA No. 22244
ROBERT N. BARNES, P.C.
208 NW 60th ST
Oklahoma City, OK  73118
Telephone: (405) 843-0363
Facsimile: (405) 832-1007
Attorneys for Plaintiff

**YOU MAY SEEK THE ADVICE OF ANY ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR RESPONSE.  SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT A RESPONSE MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

**EXHIBIT 3**

# RETURN OF SERVICE

The Petition on file herein along with a copy of this Summons were personally served

upon the Defendant, **BP AMERICA PRODUCTION COMPANY**, on **JANUARY 3, 2018** via

CERTIFIED MAIL as established by the receipt and green card attached hereto below.

Robert N. Barnes



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____
☑ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required          $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$

Total Postage and Fees
$

Sent To BP America Production Company    The Corp. Company
Street and Apt. No., or PO Box No. 1833 S Morgan Rd
City, State, ZIP+4 OKC, OK 73128

OKLAHOMA CITY, OK
Postmark Here
JAN 2 2018
USPS 73118-9998

7017 2400 0000 5219 4787

PS Form 3800, April 2015 PSN 7530-02-000-    See Reverse for Instructions



**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BP America Production Company
The Corporation Company
1833 S Morgan Rd
OKC, OK 73128

9590 9402 3529 7275 0460 46

2. Article Number *(Transfer from service label)*
7017 2400 0000 5219 4787

A. Signature
X _____ ☑ Agent
          ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Best                            JAN 03 2018

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature                 ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☑ Certified Mail®                 ☐ Registered Mail Restricted Delivery
☑ Certified Mail Restricted Delivery ☐ Return Receipt for Merchandise
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation™
    ☐ Insured Mail                ☐ Signature Confirmation Restricted Delivery
    ☐ Insured Mail Restricted Delivery ($500)

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt



# OKLAHOMA
## State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR NOWATA COUNTY, OKLAHOMA

**No. CJ-2017-00065**
**(Civil relief more than $10,000)**

CHIEFTAIN ROYALTY COMPANY V. BP
AMERICA PRODUCTION COMPANY

Filed: 12/27/2017

Judge: GIBSON, CARL G.

## PARTIES

BP AMERICA PRODUCTION COMPANY, Defendant
CHIEFTAIN ROYALTY COMPANY, Plaintiff

## ATTORNEYS

**Attorney**

BARNES, ROBERT N.
208 NW 60TH STREET
OKLAHOMA CITY , OK 73118

**Represented Parties**

## EVENTS

None

## ISSUES

## DOCKET

**EXHIBIT 4**

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 12-27-2017 | | PETITION FILED $10,001 OR MORE  <br>Document Available (#CC17122700000011) 📄TIFF   📄PDF | | | $ 163.00 |
| | | (Entry with fee only) | | | $ 6.00 |
| | | (Entry with fee only) | | | $ 7.00 |
| | | (Entry with fee only) | | | $ 25.00 |
| | | LENGTHY TRIAL FUND | | | $ 10.00 |
| | | OK COURT APPOINTED SPECIAL ADVOCATES | | | $ 5.00 |
| | | 10% OF CASA TO COURT CLERK REVOLVING FUND | | | $ 0.50 |
| | | OK COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | | | $ 1.55 |
| | | 10% OF COJC TO COURT CLERK REVOLVING FUND | | | $ 0.16 |
| | | STATE JUDICIAL REV. FUND INTERPRETER & TRANSLATOR SERVICES | | | $ 0.45 |
| | | 15% TO DISTRICT COURT COURT FUND | | | $ 0.75 |
| | | 15% TO DISTRICT COURT FEE COURT FUND | | | $ 0.23 |
| | | CO COMMISSIONER COURTHOUSE SECURITY | | | $ 10.00 |
| | | 10% TO CO COMMISSIONER COURTHOUSE SECURITY REVOLVING FUND | | | $ 1.00 |
| | | 15% TO CO COMMISSIONER COURTHOUSE SECURITY COURT FUND | | | $ 1.50 |
| 12-27-2017 | | SUMMONS ISSUED  <br>Document Available (#CC17122700000024) 📄TIFF   📄PDF | | | $ 10.00 |
| 01-16-2018 | | SUMMONS FILED  <br>Document Available (#CC18011600000114) 📄TIFF   📄PDF | | | |