**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BP AMERICA PRODUCTION COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18-cv-54-JED-JFJ |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant BP America Production Company ("BP") respectfully moves to dismiss Plaintiffs' First Amended Complaint (Dkt. #39, the "Amended Complaint"). In support of this motion, BP shows the Court as follows:

**INTRODUCTION**

Plaintiffs' Amended Complaint seeks to add a set of class claims that cannot be asserted by Plaintiffs or the proposed class. Plaintiffs have alleged that non-class members, the non-owner "various states," were shorted when O&G Proceeds were turned over to those states as "Unclaimed Property" without including enough interest. Plaintiffs have alleged no facts showing that they or any proposed class members have complied with those states' laws to establish their entitlement to receive the Unclaimed Property, and have received that property. Until they do so, the states are the rightful holders of the Unclaimed Property and the only persons entitled to claim that more accrued interest should have been included with it. Plaintiffs allege no damages here.

In any event, states like Oklahoma provide procedures for the reporting, auditing, and collecting of unclaimed property, complete with the collection of accrued interest. Those laws also provide extensive procedures for purported owners to claim the property and protections for

holders who remit the property to the state. Plaintiffs cannot bypass the state laws, procedures, and protections to assert that a state was underpaid.

Finally, the Amended Complaint was filed without leave of Court, is a nullity, and should have no effect. Any motion for leave to add the "Unclaimed Property" claims would have been denied as futile for the same reasons as set forth in this motion to dismiss.

## PROCEDURAL BACKGROUND – THE AMENDED COMPLAINT[1]

Pursuant to the Court's Class Certification Scheduling Order (Dkt. #36), as extended (Dkt. #38), Plaintiff Chieftain Royalty Company ("Chieftain") had until September 10, 2018, to "file Motions for Joinder of Additional Parties and/or Amendment to Complaint." On September 10th, however, Chieftain failed to file any motion for amendment or motion for joinder. Rather, Chieftain simply filed the Amended Complaint, violating the Court's order and depriving BP of its opportunity to object to the proposed amendments.

The Amended Complaint purported to join a new plaintiff and to alter the class claims in several ways. Most importantly for purposes of this motion, it added a new species of class member, namely persons

> whose O&G Proceeds have been, or during the pendency of this action will have been, paid over by Defendant to various state agencies as unclaimed or abandoned property ("Unclaimed Property") without the payment of statutory interest prescribed by the Act . . . .

(Am. Compl. ¶ 16(2).) This motion calls the proposed group the "Unclaimed Owners."

The Unclaimed Owners group does not include the "various state agencies" who received the Unclaimed Property. (*See id.* ("persons . . . whose O&G Proceeds . . . have been . . . paid . . . to various state agencies" (emphasis added)); *id.* ¶ 18(a) (alleging that the common questions include "[w]hether Plaintiffs and the Class own legal interests in the Oklahoma Wells"

[1] This motion treats the factual allegations in the Amended Complaint as true. BP does not admit that the allegations are true or that they have any merit.

(emphasis added)); *id*. ¶ 34 (referring to "Plaintiffs and the Class" as the "owners" legally entitled to O&G Proceeds).)

And, Plaintiffs[2] are not alleging that either they or the Class are entitled to payment from BP for the amount of Unclaimed Property paid over to the "various states"; rather, they want to be paid any "statutory interest" allegedly due, but not yet provided to those states. (*See* Am. Compl. ¶ 45 (complaining that "Defendant did not pay the interest owing on the Untimely Payments" when it "paid O&G Proceeds to various states as Unclaimed Property"); *id*. ¶ 47 (alleging that "Defendant's failure to pay interest . . . caused Plaintiffs and the Class to suffer harm").)

The net result is that Plaintiffs are now asserting that they and other mineral owners should receive the interest that BP allegedly should have paid to various states as Unclaimed Property.

## ARGUMENT AND AUTHORITIES

### I. Plaintiffs Fail to State a Claim as Unclaimed Owners

Unclaimed property acts are a trade-off. While the holder[3] still holds an owner's property, a verifiable owner may demand it from the holder, or even sue – but only for the time set by the applicable statute of limitations. After too much time has passed, the owner can no longer make a claim against the holder. This can result in holders having funds that are not theirs, but to which no one can claim a right, potentially creating a windfall.

[2] To avoid confusion, "Plaintiffs" refers to both Plaintiff Chieftain and proposed plaintiff Castlerock Resources, Inc.

[3] A "holder" is a person who is "in possession of property belonging to another, a trustee, or indebted to another on an obligation." Okla. Stat. tit. 60, § 651(7)(a)-(c) (subsections omitted).

To remedy this and raise revenue, states have passed various unclaimed property statutes.[4] Under these statutes, a state takes the unclaimed property and uses it for its own benefit. The state makes sure it has received all of the unclaimed funds and penalizes holders who hold anything back. The state then pays itself a percentage of what is collected to cover its costs, keeps any income it earns while holding the unclaimed property, and transfers most of that property to the General Revenue Fund to be used for state expenditures. In exchange, however, the holders and original owners get a benefit, too.

For the owners, so long as there is sufficient money in the state's reserves, the owners can always go to the state and claim the property. They can wait five, 10, 20 years, or more. There is no statute of limitations.

For the holders, there is a release of liability and indemnity for the funds paid, procedural protections when the state believes the funds paid are too low, and a statute of limitations. After four years of reporting, a holder can have the security of knowing that it has paid what was owed and the state cannot claim any more.

Plaintiffs are attempting to bypass this process; they assert that statutory interest that allegedly was owed to the states should, instead, now be paid to them. But, Plaintiffs have shown no entitlement to the underpaid unclaimed funds and cannot upset the trade-off mandated by state law.

**A. Standard of Review**

BP moves to dismiss Plaintiffs' claims as Unclaimed Owners for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive this motion, the

[4] "Although the practical reason behind the states' [unclaimed property laws] is to prevent unclaimed personal property being eventually appropriated by the present holder . . ., it is sometimes admitted that the statutes are also a means of raising revenue." *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 390 (3d Cir. 2012) (alterations and internal quotation marks omitted) (referring, in part, to Oklahoma's laws).

Amended Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court assumes the truth of well-pleaded facts, and draws inferences in the light most favorable to Plaintiffs, but it does not accept legal conclusions as true. *Dahn v. Amedei*, 867 F.3d 1178, 1185 (10th Cir. 2017). The factual allegations must raise a right to relief beyond mere speculation. *Id*. The plausibility analysis includes determining whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### B. Plaintiffs Have Not Alleged They Are Entitled to the Underpaid Royalties Sent to the States (Including Interest, if Any)

Under either unclaimed property act potentially applicable to Plaintiffs,[5] the State of Oklahoma would be the entity currently entitled to any underpaid royalties under the facts alleged in the Amended Complaint.

#### 1. Oklahoma's Two Unclaimed Property Acts – the UPMA & the Uniform Act

Oklahoma has two potentially applicable unclaimed property acts, which work together in tandem – the Unclaimed Pooled Monies Act ("UPMA"), Okla. Stat. tit. 52, §§ 551-558,[6] and the Uniform Unclaimed Property Act (the "Uniform Act"), Okla. Stat. tit. 60, §§ 651-688.[7] The UPMA is a narrower act that temporarily covers payments due under oil and gas pooling orders, while the Uniform Act covers a wider array of property, including royalty payments not subject

---

[5] Plaintiffs' allegations of "various states," to which unclaimed property has been paid by BP over an apparently unlimited time period, are too vague to allow BP meaningfully to respond. However, as both Plaintiffs allege to be Oklahoma entities, this motion focuses on the laws that would arguably apply to their unclaimed property (if any) – those of the State of Oklahoma. *See* Okla. Stat. tit. 52, § 552(A); *id*. tit. 60, § 659.

[6] The UPMA regulations are found at Okla. Admin. Code §§ 165:10-25-1 to 165-10-25-10.

[7] The Uniform Act regulations are found at Okla. Admin. Code §§ 735:80-1-1 to 735:80-15-6.

to pooling orders. The UPMA only applies for five years, before property under it is subjected to the Uniform Act, and even for those five years, parts of the Uniform Act apply to its funds.

**a. The UPMA**

The UPMA is "intended to allow Oklahoma to seize unclaimed monies belonging to . . . owners of forced pooled oil and gas interests with a last known address in Oklahoma," among others. *TXO Production Corp. v. Okla. Corp. Comm'n*, 1992 OK 39, 829 P.2d 964, 970-71. In general terms, the UPMA provides for the escrow, reporting, and then yearly payment to the Oklahoma Corporation Commission ("OCC") of royalties or other monies owing to persons under pooling orders who are unknown or cannot be located. Okla. Stat. tit. 52, § 552(A)-(C), (E); Okla. Admin. Code § 165:10-25-6(a). Immediately after receiving these monies, the OCC transfers 90% to the State Treasurer for deposit in the "Mineral Owner's Fund" and keeps 10% for its own costs. Okla. Stat. tit. 52, §§ 553, 554(A) & (D). While in the Mineral Owner's Fund, the monies are subject to the Uniform Act's rules for claiming the property and are part of the State Treasurer's process to locate owners. *Id.* § 554(B)-(C). Five years after the date of pooling, the monies leave the Mineral Owner's Fund and become subject to the Uniform Act. *Id.* § 556.

**b. The Uniform Act**

The Uniform Act "provides a comprehensive scheme for reporting, collection, maintenance, distribution, and escheat of tangible and intangible property deemed abandoned by its provisions." *Dani v. Miller*, 2016 OK 35, ¶12, 374 P.3d 779, 786-87 (footnote omitted), *cert. denied*, --- U.S. ---, 137 S. Ct. 481 (2016). As such, the Uniform Act applies to a wide range of property, including intangible personal property, which in turn includes "amounts due and payable under the terms of . . . mineral leases." Okla. Admin. Code § 735:80-1-2 ("intangible personal property"); Okla. Stat. tit. 60, § 658 (governing the report of intangible personal

property). Proceeds from mineral interests can be deemed abandoned for all the reasons applicable to any intangible property. They are also deemed abandoned by Oklahoma when they have been "held in suspense pending title requirements" for five years after becoming due without correspondence concerning title. Okla. Admin. Code § 735:80-11-20(e). Like the UPMA, the Uniform Act provides for annual reporting and payments to the State. *See, e.g.*, Okla. Stat. tit. 60 § 658(B) (remittance of intangible personal property and interest); *id*. § 661 (verified reporting); *id*. § 663 (payment with verified reporting).

**2. The State Financially Benefits from the Unclaimed Funds**

Under both the UPMA and Uniform Act, the State gains a monetary benefit from the unclaimed funds. With the UPMA, as noted above, the OCC automatically keeps 10% of all funds sent to it. Okla. Stat. tit. 52, § 554(D). When the remaining 90% is placed in the Mineral Owner's Fund, the State invests those monies and keeps most of the interest earned to pay certain costs. Okla. Stat. tit. 52, § 555.

As for the Uniform Act, once monies are received by the State Treasurer, only a portion is kept in reserve as the "Unclaimed Property Fund." Okla. Stat. tit. 60, § 670. The rest is deposited in Oklahoma's General Revenue Fund "for use by the state." *Dani*, ¶15, 374 P.3d at 787. At that point, "'all rights of any owner of unclaimed property to resort against the money so paid into the General Revenue Fund shall terminate'" and any owners' claims must be paid from the amounts held in reserve, which are replenished by other collections by the State of unclaimed property. *Dani*, ¶15, 374 P.3d at 788 (quoting Okla. Stat. tit. 60, § 670). This is done so that "the State and general public receive the benefits of such property rather than allowing holders of abandoned property to reap windfalls when a statute of limitations would cut off recovery from rightful owners." *Dani*, ¶16, 374 P.3d at 788; *see also Unit Petroleum Co. v. Veitch,* 79 F. Supp. 3d 1234, 1242 (N.D. Okla. 2015) ("the [Uniform Act] essentially converts unclaimed or

abandoned property into an interest free loan to the state . . ., and the loan lasts indefinitely until the true owner of the property can be found").

### 3. The State Requires that All Unclaimed Funds Owed, Including Interest (if any), Be Paid to the State

As the entity with its own financial interest in unclaimed funds, the State naturally attempts to maximize those receipts and requires that interest and other accrued monies be paid to it. So, the UPMA applies not just to the base royalties but also "bonus payments[] or other monies" owed under pooling orders, Okla. Stat. tit. 52, § 552(A)(1), whether initially owed or "subsequently generated," *id*. § 552(E). Similarly, the Uniform Act requires the holder to report and remit "all interest, additions, and increments accrued to the account of the owner." Okla. Stat. tit. 60, § 658(B); *see also* Okla. Admin. Code § 735:80-3-7 (same).[8]

As a result, to the extent Plaintiffs are claiming that royalties were underpaid when they were submitted to the State as Unclaimed Property without enough interest, Plaintiffs are claiming that the State did not receive the funds it was owed under the UPMA and the Uniform Act.

### 4. Plaintiffs Do Not Allege They Have Complied with State Law for Claiming the Unclaimed Property and Cannot Assert a Current Right to It

Plaintiffs do not allege that they, themselves, are the owners of any O&G Proceeds paid to a state as Unclaimed Property. In any event, Plaintiffs do not allege that they or members of the proposed class have complied with the exclusive and detailed procedure set by the State of

[8] BP does not agree or concede that interest was improperly withheld from Unclaimed Property remitted to the State. There are multiple situations in which interest may be waived by contract or otherwise is not due. Indeed, the Oklahoma Attorney General has opined that interest is never due on certain unclaimed mineral proceeds. 1989 OK AG 53, 21 Okla. Op. Atty. Gen. 63. However, the Court need not decide whether interest was owed to the State to determine that Plaintiffs cannot state this claim.

Oklahoma (or any other state) for proving they are owners of the property and entitled to claim it.

Both the UPMA and Uniform Act have detailed processes for asserting a right to unclaimed funds held by the State Treasurer. The UPMA requires that claims for monies still in the Mineral Owner's Fund be made to the State Treasurer with "sufficient proof of ownership," Okla. Stat. tit. 52, § 554(C), and such claims are otherwise subject to the Uniform Act, *id*. tit. 60, § 675(D). For both laws, there is a general claims process, Okla. Admin. Code § 735:80-7-1, and lists of the various items necessary to prove ownership of different types of property, including mineral proceeds, *id*. § 735:80-7-2(b)(8), property held for deceased owners, *id*. § 735:80-7-2(b)(11), and claims based on the transfer of a mineral interest, *id*. § 735:80-7-2(b)(14). There are also prohibitions on third parties receiving any royalties, or more than 25% of the unclaimed funds, in exchange for making a claim on the owner's behalf. Okla. Stat. tit. 60, § 674.1(A).

There are simply no allegations that Plaintiffs, or anyone else, complied with these procedures and successfully claimed ownership of the purportedly underpaid royalties. Until they have done so, they cannot legitimately claim ownership in the funds. *Cf. Unit*, 79 F. Supp. 3d at 1243 (noting that party claiming ownership of abandoned property "was required to comply with the applicable unclaimed property laws and file a claim with the state treasurer in order to legitimately claim ownership" and, having failed to do so, he "cannot be found to be the owner"). As such, Plaintiffs cannot claim to have been "injured in business or property by reason of" BP's purported violation of the Production Revenue Standards Act ("PRSA"),[9] or to

[9] Okla. Stat. tit. 52, §§ 570.1-570.15.

have suffered any damages under the PRSA or common law. Okla. Stat. tit. 52, § 570.14(C) (PRSA – Counts I -II); *id*. tit. 76, § 2 (fraud – Counts III-V).[10]

### C. Plaintiffs Cannot Bypass the Extensive and Exclusive State Law Procedures for Enforcing the Unclaimed Property Acts, Including the Protections for Holders Like BP

Even if Plaintiffs had alleged a current right to the purportedly underpaid Unclaimed Property, they cannot use this lawsuit as a means to bypass the extensive state laws governing the reporting and remittance of unclaimed property, the audits and other provisions for enforcing the laws, and the protections provided to holders like BP.[11]

#### 1. State Law Has Extensive Processes for Maximizing Unclaimed Property Remittances

Oklahoma's unclaimed property laws come with elaborate processes and procedures.

There are detailed reporting requirements. *See, e.g.,* Okla. Stat. tit. 52, § 552(C) (listing items required in reports on UPMA escrow accounts); Okla. Admin. Code § 735:80-3-1 (setting

---

[10] Counts IV and V seek equitable relief and do not include amounts paid to the various states as Unclaimed Property. (Am. Compl. ¶ 71 (seeking an accounting as to "interest that each Plaintiff and each Class member should have been paid by Defendant"); *id*. ¶ 80 (seeking an injunction "ordering Defendant to pay statutory interest . . . when Defendant makes future Untimely Payments to Plaintiffs and the Class").)

[11] Plaintiffs do not claim to be enforcing the UPMA or Uniform Act, and they completely ignore both Acts' terms and requirements. In any event, neither Act creates a private right of action for a yet-unproven owner of unclaimed property against a holder for failure to comply with the Acts. The Court will only infer such a right if (1) the plaintiff is one of the class for whose *especial* benefit the statute was enacted; (2) there is some indication of legislative intent to suggest the legislature wanted to create a private remedy and not to deny one; and (3) implying a private remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme. *Holbert v. Echeverria*, 1987 OK 99, 744 P.2d 960, 963, *superseded by statute on other grounds*.

general reporting requirements under the Uniform Act[12]); *id*. § 735:80-3-35 (listing items required to report mineral interest proceeds).

There are detailed audit capabilities. If the State Treasurer has reason to believe that someone has failed to report property, he may demand that a report be made and examine their records. Okla. Stat. tit. 60, § 678(A)-(B). This process includes the Treasurer's audit of holders' reports, which can result in additional amounts owed. Okla. Admin. Code § 735:80-9-1; *id*. § 735:80-9-3(a). It can also result in a field audit, when there is reason to believe the holder "has not properly reported unclaimed property." *Id*. § 735:80-11-2; *see also id*. § 735:80-11-20(a) ("Energy related companies shall be examined under any or all of the circumstances defined in 735:80-11-2.").

There are detailed consequences for failure to make adequate reports or payments. Any person who fails to pay or deliver property may be subjected to 10% interest, as well as penalties for certain failures. *See* Okla. Stat. tit. 60, § 680(A) (interest); *id*. § 680(B)-(D) (penalties for willful failure to pay or deliver property); Okla. Admin. Code § 735:80-9-2(a)(3) (providing for interest and penalties, including when items should have been reported and remitted in prior years). These include the ability of the State Treasurer to bring litigation, after conclusion of the administrative protest process. *See* Okla. Stat. tit. 60, § 679(A); Okla. Admin. Code § 735:80-1-4(e).

**2. State Law Has Protections for Holders**

While the State has a lot in its arsenal, the law also provides process and limitations for holders. They can protest a finding of the Unclaimed Property Division and receive a hearing. Okla. Admin. Code § 735:80-1-4. They can pay disputed amounts under protest to reduce the

[12] The referenced forms may be found at https://www.ok.gov/treasurer/Unclaimed_Property/Holder_Information/ (last visited 9/30/2018).

risk of interest. *Id*. § 735:80-1-6. They can take advantage of the detailed administrative proceedings that provide for an informal process, then a formal hearing, then an appeal to a state district court. *Id*. § 735:80-13-1; *see also id.* §§ 735:80-13-2 to 735:80-13-27 (setting the details of this administrative process).

There is also a statute of limitations. "No action or proceeding may be commenced by the State Treasurer with respect to any duty of a holder under the [Uniform Act] more than four (4) years after the holder files the report . . . or ten (10) years after the duty arose, whichever is earlier." Okla. Stat. tit. 60, § 666(B).

Once the amount a holder owes is set, and it pays that amount over to the State, the holder can be assured that its total liability is complete.

> If the holder pays or delivers property to the State Treasurer in good faith and thereafter another person claims the property from the holder . . ., the State Treasurer . . . shall defend . . . and, to the extent of the property's value, shall indemnify the holder against liability on the claim. <u>Neither the holder</u> nor the State Treasurer <u>shall be liable for more than the value of the property</u>, determined as of the time of its payment or delivery to the State Treasurer, if the holder paid or delivered the property to the State Treasurer in good faith.

Okla. Stat. tit. 60, § 664(E) (emphasis added); *id.* § 664(F) (defining good faith as including that payment was made "in a reasonable attempt to comply with the [Uniform Act]"); *see also* Okla. Admin. Code § 165:10-25-9 ("Any holder who pays or delivers monies to the [OCC] required to be paid under this Subchapter [for the UPMA] shall be relieved of all liability for the monies so paid or delivered for any claim which then exists or thereafter may arise or be made in respect to such monies.").

Plaintiffs have failed to allege any facts plausibly showing that they or any class member could be entitled to recover damages from BP for any funds purportedly underpaid to a state as Unclaimed Property.

## II. Plaintiffs' First Amended Complaint is a Nullity

This motion is focused on Plaintiffs' failure to state a claim regarding the interest purportedly omitted from the Unclaimed Property. However, there is an issue that affects the entirety of the Amended Complaint; it was filed without the Court's leave or BP's consent. Under Rule 15, Chieftain could have amended its original Petition once, as a matter of course, within 21 days of BP's original Answer. Fed. R. Civ. P. 15(a)(1)(B). This time expired over seven months ago, on February 20, 2018. After that point, Chieftain could amend only with BP's written consent[13] or the court's leave. Fed. R. Civ. P. 15(a)(2). Chieftain did not seek or obtain BP's consent, and, as shown by the procedural history above, the Court's scheduling order did not provide leave to amend without first filing a motion for leave, to which BP would have had a right to object. As a result, the Amended Complaint is a nullity. *Quintana v. Adair*, 673 F. App'x 815, 820 (10th Cir. 2016) ("the second amended complaint was a nullity, having been filed without leave . . . or . . . consent"), *cert. denied*, --- U.S. ---, 138 S. Ct. 446 (2017).

BP will follow the Court's instruction on how best to address this problem created by Chieftain's failure to comport with the Court's orders. BP only notes that, as it relates to the Unclaimed Owners' claim, it would have been proper for the Court to deny leave to amend as futile. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992) ("The district court was clearly justified in denying the motion to amend if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim." (internal quotation marks omitted)).

---

[13] Chieftain cannot find consent in BP's non-opposition to their Motion to Extend Deadline for Joinder of Parties and Amendments to Complaint (Dkt. #37). That motion involved extending the deadline to file motions for leave; it did not provide for amendment without leave. Similarly, BP's Motion for Extension of Time (Dkt. #40) did not provide a post-filing consent to the amendment, if that were possible. BP's motion simply sought an extension of time to "answer, file motions, or otherwise respond to the Amended Complaint."

## CONCLUSION

The primary thrust of Plaintiffs' improperly filed Amended Complaint was to assert claims Plaintiffs cannot assert – that they are entitled to a payment of interest on funds that were underpaid to a state. Plaintiffs have failed to plead any facts demonstrating any entitlement to these funds (with or without interest). To the extent the Amended Complaint is not stricken, Plaintiffs' claims on behalf of the Unclaimed Owners group should be dismissed.[14]

DATED October 8, 2018.

Respectfully submitted,

s/Susan E. Huntsman
L. Mark Walker, OBA #10508
Harvey D. Ellis, OBA #2694
Micah L. Adkison, OBA #33107
CROWE & DUNLEVY
A PROFESSIONAL CORPORATION
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
mark.walker@crowedunlevy.com
harvey.ellis@crowedunlevy.com
micah.adkison@crowedunlevy.com

Susan E. Huntsman, OBA #18401
CROWE & DUNLEVY
A PROFESSIONAL CORPORATION
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK 74103-3313
(918) 592-9800
(918) 592-9801 (Facsimile)
susan.huntsman@crowedunlevy.com

Mark D. Christiansen, OBA #1675
MCAFEE & TAFT
A PROFESSIONAL CORPORATION

[14] BP's deadline to answer any surviving claims in the Amended Complaint should become due 14 days after the Court rules on this Motion to Dismiss. Fed. R. Civ. P. 12(a)(4). However, in an abundance of caution, BP is filing today a motion for extension of time to clarify this deadline.

10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 552-2233
Facsimile: (405) 228-7435
mark.christiansen@mcafeetaft.com

ATTORNEYS FOR DEFENDANT BP AMERICA PRODUCTION COMPANY

CERTIFICATE OF SERVICE

☑ I hereby certify that on this 8th day of October, 2018, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Jeffrey John Angelovich
Robert Norton Barnes
Michael Burrage
Paula M Jantzen
Patranell Britten Lewis
Jason Andrew Ryan
Phillip Gardner Whaley
Lisa Paulette Baldwin
Bradley Earl Beckworth
Cody Lee Hill
Emily Nash Kitch
Andrew Gordon Pate
Patrick Michael Ryan

s/Susan E. Huntsman