**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY, and<br>CASTLEROCK RESOURCES, INC., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No. 18-cv-54-JED-JFJ |
| BP AMERICA PRODUCTION<br>COMPANY, | )<br>)<br>) | |
| Defendant. | )<br>) | |

<u>**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS**</u>

Defendant BP America Production Company ("BP") respectfully files this reply in support of its Motion to Dismiss Plaintiffs' First Amended Complaint.

## INTRODUCTION

Plaintiffs admit they have failed to plead <u>any</u> class member's entitlement to the principal of the Unclaimed Property – but they still assert they can claim the interest on that principal. This is contrary to the plain terms of the Production Revenue Standards Act ("PRSA"), Okla. Stat. tit. 52, § 570.10(D), and cannot be squared with Oklahoma's unclaimed property laws. Indeed, while Plaintiffs' response is wide-ranging, inflammatory, and focused primarily on irrelevant issues, a few things are clear:

- Plaintiffs do not assert that they, themselves, are entitled to any Unclaimed Property (principal or interest);

- Plaintiffs' new purported class group[1] consists of owners who have not actually established, to the State's satisfaction, that they are entitled to the principal of the Unclaimed Property;

---

[1] This is a substantial expansion of Plaintiffs' claims. In their Motion for Leave to Amend (Dkt. #53 ¶ 2), Plaintiffs asserted that BP had notice of their allegations under the original petition. However, under the prior petition, Plaintiffs' claims were only asserted on behalf of owners who "<u>received</u> . . . Untimely Payments <u>from</u> Defendant" without interest. (Pet. ¶ 21(1), Dkt. 2 at 20

- Plaintiffs' proposed class does not include the State, and yet they are attempting to recover monies they agree is owed to the State;

- Plaintiffs seek to bypass state law on determining the rightful owner of the Unclaimed Property; and

- Plaintiffs seek to deduct costs and fees from any interest recovered on the Unclaimed Property before turning it over to purported rightful owners or the State.

In effect, Plaintiffs seek to bypass the State's system for maximizing the Unclaimed Property it receives (principal and interest, if due), for determining the persons entitled to claim ownership of that Unclaimed Property, and for releasing BP from liability for that Unclaimed Property. All of this subjects BP to potential double claims from the undisputed rightful holder (the State) and potential owners who have never claimed the principal (the purported class).

That certainly would be the "neat trick" (Pl. Resp. at 11) in this case, if there was one. Plaintiffs' counsel could sue a company they believe has relied, for the past <u>30 years</u> on an Oklahoma Attorney General opinion stating that no interest is owed on certain unclaimed funds,[2] ignore all other contracts or documents in which parties waive interest in individual cases, assert that the five-year statute of limitations[3] does not apply, and assert a claim for 12% interest on all monies paid over to any State as unclaimed property over the past 20, 25, or even 30 years. Then, take a 40% cut for attorney's fees, plus additional expenses, and, after that, conduct mini-trials to determine who is the rightful owner of the Unclaimed Property and entitled to the interest on it – even if the State does not agree or has paid the principal to a different person.

of 34.) This necessarily would not include anyone whose purported proceeds were paid to the State and who did not receive them from BP.

[2] "[T]he interest provisions enumerated in [Okla. Stat. tit. 52, § 540] do not apply to unclaimed proceeds." 1989 OK AG 53, ¶20(3), 21 Okla. Op. Atty. Gen. 63. Note that § 540 was later renumbered as § 570.10. *See* 1992 Okla. Sess. Law Serv. Ch. 190 § 28 (S.B. 168) ("Section 540 . . . shall be recodified as Section 570.10 of Title 52 of the Oklahoma Statutes.").)

[3] Okla. Stat. tit. 52, § 570.14(D).

After which, take the amounts that remain (minus the 40% plus expenses) and pay it over to the State – who could not have hired counsel without following a competitive process[4] and could not pay more than 15% if it had contracted for information leading to the deposit of unclaimed property.[5]   Meanwhile, the State, as a non-party, would not be bound by this Court's determination of who was entitled to claim the Unclaimed Property and could go after BP to pay 100% of any amounts it thinks were paid to the wrong "owner" and the 40-plus% of the amounts withheld by Plaintiffs' counsel from the interest it paid into the fund.[6]

This will not work.  Plaintiffs cannot state a claim with no damages.  If an "owner" is not entitled to the principal; it is not entitled to the interest.  Plaintiffs have failed to state a claim upon which relief may be granted.

## ARGUMENT AND AUTHORITIES

**I.     Plaintiffs Have Not Alleged They Are Entitled to the Principal – But They Want the Interest**

To be perfectly clear, Plaintiffs admit that they are seeking to recover the interest due on the Unclaimed Property <u>without ever alleging</u> (or proving) that their class members are entitled to the principal.  Or, in Plaintiffs' own words,

> *Plaintiffs' experts will calculate the amount of earned interest BP failed to pay for the benefit of Unlocated Owners.  That earned interest will be paid over to those Owners who can be found after a diligent search, less whatever costs and fees the Court determines are proper.  The remaining net statutory interest will be paid into the Unclaimed Property Fund for the benefit of those Owners.*

---

[4] Okla. Stat. tit. 60, § 668.1(C) ("The purchase of such [legal] services shall be chosen by a solicitation of proposals on a competitive basis . . . .").

[5] Okla. Stat. tit. 60, § 668.1(B) ("The State Treasurer shall be authorized to expend monies . . . in payment of a reasonable fee not to exceed fifteen percent (15%) of the delivered funds to a . . . corporation contracting with the State Treasurer providing information leading to the delivery of unclaimed property . . . .").

[6] *See* Section IV, *infra*.

(Resp. at 2 n.2 (italics added).)  Plaintiffs do not bring claims on behalf of owners who applied to the State and received the Unclaimed Property, but who now believe they had been shorted the interest due on the principal.[7]  Plaintiffs bring their claims on behalf of purported owners who have never applied to the State for the principal in the first place.  In this instance, those "Unlocated Owners" cannot legally assert that they are the owners of the principal.  *Cf. Unit Petroleum Co. v. Veitch*, 79 F. Supp. 3d 1234, 1243 (N.D. Okla. 2015) (refusing to recognize person claiming ownership of abandoned property as the "owner" when he had failed to "comply with the applicable unclaimed property laws and file a claim with the state treasurer in order to legitimately claim ownership").  It is this principal – the "proceeds" – that earn PRSA interest.  *See* Okla. Stat. tit. 52, § 570.10(D)(1) ("where proceeds from the sale of oil or gas production . . . are not paid . . ., that portion not timely paid shall earn interest"); *id*. § 570.10(D)(2)(a)  ("such proceeds shall earn interest").  Plaintiffs have failed to allege an entitlement to the principal – the "proceeds" – and, therefore, cannot claim the interest earned on those proceeds.  For this reason, alone, Plaintiffs' claims on behalf of the Unclaimed Owners group should be dismissed.

However, as shown below, Plaintiffs' claims also demonstrate a willful disregard for the state statutory scheme that occupies the field and provides no private right of action.  (*See also* Mot. at 10-12.)

## II.     Plaintiffs Are Attempting to Deprive the Non-Party *State* of the Right to Decide Ownership in the Unclaimed Property (Including Interest, if Any Is Due)

> *Plaintiffs' experts will calculate the amount of earned interest BP failed to pay for the benefit of Unlocated Owners.  That earned interest will be paid over to those Owners who can be found after a diligent search . . . .*

(Resp. at 2 n.2.)  But, Oklahoma's statutes vest the <u>State</u> with the first right to determine who is the actual owner of the Unclaimed Property.  And, contrary to Plaintiffs' assertion, the procedure

---

[7] As noted in the Motion (at 12), BP believes such a claim would be barred by Okla. Stat. tit. 60, § 664(E).

to claim <u>and prove</u> ownership of the Unclaimed Property to the State's satisfaction is not merely a matter of printing a form off of the Internet.  (Resp. at 7 n.5.)

Yes, a person may <u>initiate</u> a claim by filing a form prescribed by the State Treasurer and verified by the claimant.  Okla. Stat. tit. 60, § 674(A).  However, a "claim" means a demand "with the necessary supporting ownership documents . . . ."  Okla. Admin. Code § 735:80-1-2 ("Claim").  For mineral proceeds, this may include (A) the mineral deed; (B) surface deed which includes minerals retained, sold, or purchased; (C) probate inventory; (D) oil and gas lease; (E) purchase documents for an overriding royalty interest; (F) current division order; (G) certification of current pay status; or (H) a letter from the holder authorizing release of funds reported and remitted by the holder.  *Id*. § 735:80-7-2(b)(8).

If the purported owner is claiming the mineral proceeds because the original owner is deceased (a common reason for mineral proceeds to become unclaimed), then different documents are required depending upon the amount at issue.  *Id*. § 735:80-7-2(b)(11); *see also* Okla. Stat. tit. 60, § 674.2.  If the amount at issue is more than $10,000, then the claimant must institute probate proceedings and obtain either Letters of Administration/Letters Testamentary or a Decree of Distribution showing they are entitled to the Unclaimed Property.  Okla. Admin. Code § 735:80-7-2(b)(11)(A).  If the amount is $10,000 or less, the claimant must provide a copy of the death certificate and an affidavit stating that (i) the claimant is entitled to the property; (ii) the reason for the entitlement, i.e., their relationship with the listed owner and the basis for entitlement; (iii) that there has been no probate; (iv) that no probate is contemplated; and (v) that the claimant will indemnify the State for any loss, including attorney fees, should another claimant assert a prior right to the property.  *Id*. § 735:80-7-2(b)(11)(B).

If the purported owner is claiming the mineral proceeds because there had been a transfer of mineral interest and the new owner claims proceeds accruing before the transfer, then the claimant must provide (i) a deed, conveyance, or assignment clearly stating the grantee's entitlement; or (ii) an affidavit stating the reason the grantee is entitled, that reasonable notice had been given to the grantor of the existence of the monies prior to the deed, and the name and address of the grantor; or (iii) evidence that reasonable notice has been given to the grantor about the unclaimed proceeds and the grantor's right to claim them. *Id*. § 735:80-7-2(b)(14)(A).

Once a claim (including the required evidence) is received, the <u>State Treasurer</u> has 90 days to consider the claim and provide notice if it is granted or denied. Okla. Stat. tit. 60, § 674(B). A claimant may file a protest in regard to the payment or nonpayment of an item of unclaimed property, Okla. Admin. Code § 735:80-7-6, which will then be covered by the regulations' extensive procedures, *id*. §§ 735:80-13-1 – 735:80-13-27.

### III. Plaintiffs Are Attempting to Deprive the Non-Party *State* of the Full Amount of Money to Which It Is Entitled (*if* Plaintiffs' Allegations Are Factually and Legally Correct)

*The remaining net statutory interest will be paid into the Unclaimed Property Fund for the benefit of those Owners*

(Resp. at 2 n.2.) Neither of Oklahoma's unclaimed property statutes allows for a party to make deductions from the amounts owed to the State as unclaimed property. Rather, the <u>most</u> the statutes allow is for the <u>State Treasurer</u> to hire attorneys on a competitive basis and to contract with companies to provide information leading to the delivery of unclaimed property and to pay those companies no more than 15% of the delivered funds. Okla. Stat. tit. 60, § 668.1(B)-(C).[8] The law, however, does not allow the State Treasurer to use these contractors to bypass all of the

---

[8] The law also restricts the ability of owners to contract with others to help claim the funds or to recompense those who inform them of their unclaimed property. Such persons may not receive more than 25% of the value of the funds and <u>cannot</u> receive a portion of "any production payment, overriding royalty, or similar payment." Okla. Stat. tit. 60, § 674.1(A).

laws' other procedural and substantive requirements.  Plaintiffs, however, would forego all this; they would attempt to collect on behalf of a non-party State, and then deduct more than 40% before turning over the proceeds to that non-party State.

**IV.    Otherwise, Plaintiffs Are Attempting to Expose BP to Multiple, Conflicting Claims**

If Plaintiffs do not believe their attempted claims on behalf of the non-party, non-class-member States will deprive those States of more than 40% of the interest and their ability to determine ownership, then there is another problem.  Resolving Plaintiffs' interest claims on behalf of Unclaimed Owners who have never proven their entitlement to the principal will leave BP exposed to a claim for the <u>same</u> monies from the State (plus additional interest and penalties). All intangible property (including mineral interest proceeds[9]) that is held by BP and has remained unclaimed for five years is presumed abandoned.  Okla. Stat. tit. 60, § 658(A).  As a holder of such property, BP "<u>shall</u> . . . remit all proceeds" including "all interest . . . accrued to the account of the owner."  *Id*. § 658(B); *see also* Okla. Admin. Code § 735:80-3-7(same).  That is, under the statute, BP is obligated to remit both the principal and interest (if any) that may be due to the State after five years.  And, according to Plaintiffs' allegations, BP has remitted at least the principal of the Unclaimed Property to the various States.  (1st Am. Compl., Dkt. # 39, ¶ 16(2).)  <u>If</u> Plaintiffs' factual allegations and legal theories are correct (and both are disputed), <u>then</u> BP faces a mandatory obligation to pay the PRSA interest to the State with the principal. This is Plaintiffs' theory.  (Resp. at 11-12.[10])

---

[9] Okla. Admin. Code § 735:80-1-2 ("Intangible personal property," subpart (F)).

[10] "Pursuant to . . . the Uniform Act, the holder of unclaimed Proceeds (BP) must report and remit the **proceeds 'and remit all interest'** to the State Unclaimed Property Fund . . . ."  (Resp. at 11.)  "Like the Uniform Act, the UPMA also requires earned statutory interest to be paid along with O&G Proceeds."  (Resp. at 12.)

However, Plaintiffs want to take that interest, ask the Court to pay some portion of it to persons who have <u>not</u> demonstrated to the State their entitlement to the principal. And, as Plaintiffs freely admit, the State is not a party to this lawsuit or a member of the class. (Resp. at 3, referring to the "various States" as "admittedly non-class members").)

As such, the State may assert that it is not bound by any determination of entitlement to the Unclaimed Property's principal or interest.[11] *Barker v. State Ins. Fund,* 2001 OK 94, ¶ 13, 40 P.3d 463, 467 ("The doctrine [of claim preclusion] requires an identity of subject matter, of the parties or their privies, of the capacity of the parties and of the cause of action."). That State, therefore, remains free to claim it can audit BP, assert that BP has underpaid principal and/or interest, assess additional interest and penalties,[12] and subject BP to the administrative process and suit set forth in the statutes and regulations.

This is nonsensical, and the reason it is nonsensical is because the Unclaimed Owners group – consisting of individuals who have no alleged right to the principal of the Unclaimed Property – cannot state a claim for the interest.

## CONCLUSION

Plaintiffs have alleged no facts showing that the Unclaimed Owners' group is entitled to the principal of the proceeds paid to the states as Unclaimed Property. As a result, it cannot allege they are entitled to the interest earned and due on those proceeds. Plaintiffs have alleged no damages resulting from the payment of the Unclaimed Property to various States, purportedly without interest. The claims brought for interest on Unclaimed Property should be dismissed.

---

[11] Even the fact that the State collects and holds unclaimed property in trust for the owner cannot change this, where the entire disputed issue will be whether or not the person BP paid was that owner.

[12] Okla. Stat. tit. 60, § 680(A)-(C).

DATED November 13, 2018.          Respectfully submitted,

s/Susan E. Huntsman
_____
L. Mark Walker, OBA #10508
Harvey D. Ellis, OBA #2694
Micah L. Adkison, OBA #33107
CROWE & DUNLEVY
A PROFESSIONAL CORPORATION
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
mark.walker@crowedunlevy.com
harvey.ellis@crowedunlevy.com
micah.adkison@crowedunlevy.com

Susan E. Huntsman, OBA #18401
CROWE & DUNLEVY
A PROFESSIONAL CORPORATION
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK 74103-3313
(918) 592-9800
(918) 592-9801 (Facsimile)
susan.huntsman@crowedunlevy.com

Mark D. Christiansen, OBA #1675
MCAFEE & TAFT
A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 552-2233
Facsimile: (405) 228-7435
mark.christiansen@mcafeetaft.com

ATTORNEYS FOR DEFENDANT BP
AMERICA PRODUCTION COMPANY

## CERTIFICATE OF SERVICE

☑    I hereby certify that on this 13th day of November, 2018, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Jeffrey John Angelovich                 Lisa Paulette Baldwin
Robert Norton Barnes                    Bradley Earl Beckworth
Michael Burrage                         Cody Lee Hill
Paula M Jantzen                         Emily Nash Kitch
Patranell Britten Lewis                 Andrew Gordon Pate
Jason Andrew Ryan                       Patrick Michael Ryan
Phillip Gardner Whaley                  Brooke Anne Churchman


                                        s/Susan E. Huntsman