**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY | ) | |
| and CASTLEROCK RESOURCES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 18-CV-00054-GKF-JFJ |
| | ) | |
| BP AMERICA PRODUCTION COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion for Partial Summary Judgment [Doc. 72] of defendant BP America Production Company (BP). BP seeks partial summary judgment in its favor as to all of plaintiff Chieftain Royalty Company's claims, as well as to Castlerock Resources, Inc.'s claims as a royalty owner. BP does not seek summary judgment as to Castlerock's claims as a working interest owner or overriding royalty interest owner. For the reasons discussed below, the motion is granted in part and denied in part.

## I.    Background and Procedural History

Plaintiffs bring this matter on behalf of a putative class against BP for alleged violations of Oklahoma law related to statutory interest on late payments of oil and gas production proceeds to persons with a legal interest in the mineral acreage under a well which entitles such persons to payments of the proceeds. Plaintiff Chieftain Royalty Company (Chieftain) is an owner of Oklahoma well Kathleen Anderson #6, located in section 19-5N-17E, Pittsburg County, Oklahoma. Plaintiff Castlerock Resources, Inc. (Castlerock) is an owner in Oklahoma well Bowen 3-18/7H, a multi-unit horizontal well located in sections 18 & 7-3N-12E, Pittsburg County, Oklahoma.

In 1992, the Oklahoma legislature enacted the Production Revenue Standards Act, which regulates the marketing, sale, and production of hydrocarbons from Oklahoma oil and gas wells. *See* OKLA. STAT. tit. 52, §§ 570.01 *et seq* ("PRSA"). Subject to certain exceptions, the PRSA generally requires that proceeds from the sale of oil or gas production be paid to legally entitled persons not later than six (6) months after the date of first sale, and, thereafter, not later than the last day of the second succeeding month after the end of the month within which such production is sold. If the proceeds are not paid prior to the end of the applicable time period, the portion not timely paid ("Untimely Payment"), shall earn interest. OKLA. STAT. tit. 52, §§ 570.10(D).[1]

---

[1] Section 570.10 provides, in relevant part, as follows:

> D.1.  Except as otherwise provided in paragraph 2 of this subsection, where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid.

> 2.a.  Where such proceeds are not paid because the title thereto is not marketable, such proceeds shall earn interest at the rate of (i) six percent (6%) per annum to be compounded annually for time periods prior to November 1, 2018, and (ii) the prime interest rate as reported in the Wall Street Journal for time periods on or after November 1, 2018, calculated from the end of the month in which such production was sold until such time as the title to such interest becomes marketable or the holder has received an acceptable affidavit of death and heirship in conformity with Section 67 of Title 16 of the Oklahoma Statutes, or as set forth in subparagraph b of this paragraph. Marketability of title shall be determined in accordance with the then current title examination standards of the Oklahoma Bar Association.

> b.  Where marketability has remained uncured, or the holder has not been provided an acceptable affidavit of death and heirship in conformity with Section 67 of Title 16 of the Oklahoma Statutes, for a period of one hundred twenty (120) days from the date payment is due under this section, any person claiming to own the right to receive proceeds which have not been paid because of unmarketable title may require the holder of such proceeds, or the holder of such proceeds may elect, to interplead the proceeds and all accrued interest into court for a determination of the persons legally entitled

Plaintiffs allege that defendant consistently and wrongfully fails to pay the required interest on Untimely Payments, and bring this putative class action on behalf of themselves and all other similarly-situated owners who received or are entitled to receive any Untimely Payments for which defendant did not include payment of interest as required by the PRSA. Based on these general allegations, the First Amended Complaint, the operative pleading in this matter, includes the following claims: (1) breach of statutory duty to pay oil and gas proceeds ("O&G Proceeds") and interest; (2) breach of duty to investigate and pay; (3) fraud; (4) deceit; and (5) constructive fraud.[2] [Doc. 39]. Plaintiffs' proposed class is comprised of the following:

All non-excluded persons or entities:

(1)     who received or, during the pendency of this action will receive, Untimely Payments from Defendant for O&G Proceeds from Oklahoma Wells and whose payments did not also include the statutory interest prescribed by the Act;

(2)     whose O&G Proceeds have been, or during the pendency of this action will have been, paid over by Defendant to various state agencies as unclaimed or abandoned property ("Unclaimed Property") without the payment of statutory interest prescribed by the Act; or

(3)     who currently are, or become during the pendency of this action, Owners legally entitled to O&G Proceeds held by Defendant in Suspense Accounts (for reasons of unmarketable title, unknown addresses, and/or other reasons), for more than the applicable time periods prescribed in the Act, without the payment by Defendant or earning/accruing of statutory interest prescribed by the Act for the benefit of such Owners.

The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America; (2) Commissioners of the Land Office of the State of Oklahoma (CLO); (3) publicly traded oil and gas companies and their affiliates; (4) persons or entities (and their affiliates) who are the

---

thereto. Upon payment into court the holder of such proceeds shall be relieved of any further liability for the proper payment of such proceeds and interest thereon.

[2] Plaintiffs also seek relief in the form of accounting, disgorgement, and injunctive relief. These claims for relief "necessarily flow out of the base claims." *Cline v. Sunoco, Inc. (R&M)*, — F.R.D. —, 2019 WL 4879187, at *4 n.6 (E.D. Okla. Oct. 3, 2019).

Oklahoma Corporation Commission (OCC) designated operator of more than fifty (50) Oklahoma wells in the month when this Class definition was originally filed; (5) persons or entities that Plaintiffs' counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; (6) officers of the court[;] and (7) Owners in regard to whom Defendant is required by the Act to pay O&G Proceeds annually for the 12 months accumulation of O&G Proceeds totaling less than $100.00, provided, however this exclusion of so-called "minimum pay" Owners does not apply to interest claims for other 12 month periods accumulation of O&G Proceeds when the same Owner was entitled to $100 or more and thus not in a "minimum pay" status.

[Doc. 39, pp. 4-5].

BP seeks partial summary judgment in its favor as to all of Chieftain's claims, as well as Castlerock's claims as a royalty owner. BP contends that those claims are precluded by a judgment entered in a separate federal case, *John Cecil v. BP America Production Company*, No. 16-CV-410-KEW (E.D. Okla.), pursuant to the doctrine of claim preclusion. Plaintiffs filed a joint response in opposition, and BP filed a reply.

## II. Standard on Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002)). "A 'material' fact is one 'that might affect the outcome of the suit under the governing law, . . . and a 'genuine' issue is one for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (internal citation omitted).

## III.    Undisputed Material Facts

The following facts are undisputed for purposes of summary judgment.

Chieftain is a royalty owner in well Kathleen Anderson #6 in section 19-5N-17E, Pittsburg County, Oklahoma.  [Doc. 72, p. 3, ¶ 5; Doc. 91, p. 10].  Chieftain has only received proceeds from BP as a royalty owner.  [Doc. 72, p. 5, ¶ 13; Doc. 91, p. 10].  Castlerock is a royalty owner in well Bowen 3-18/7H, also located in Pittsburg County.  [Doc. 72, p. 3, ¶ 5; Doc. 91, p. 10]. Castlerock has received proceeds from BP as a royalty owner, working interest owner, and overriding royalty owner.  [Doc. 72, p. 5, ¶ 14; Doc. 91, p. 10].

John Cecil filed a proposed class action against BP America Production Company in the U.S. District Court for the Eastern District of Oklahoma on September 28, 2016.  [Doc. 72, p. 2, ¶ 1; Doc. 91, p. 10].  The Original Class Action Complaint, First Amended Class Action Complaint, and Second Amended Class Action Complaint included claims concerning "BP's actual, knowing and willful **underpayment or non-payment of royalties** on natural gas and/or constituents of the gas stream produced from wells through improper accounting methods (such as not paying on the starting price for gas products but instead taking improper deductions) and by failing to account for and pay royalties."  [Doc. 72, p. 2, ¶ 1; Doc. 91, p. 10; *Cecil v. BP America*, No. 16-CV-410-KEW, Docs. 2, 50, 180, ¶ 1 (emphasis added)[3]].  Cecil sought to represent a class of royalty owners in Oklahoma wells, originally commencing in 1993 but later extending from 1985 through 2017. [Doc. 72, p. 2, ¶ 1; Doc. 91, p. 10].  Cecil alleged that BP enriched itself with "every monthly

---

[3] The court takes judicial notice of matters that are public record in *Cecil*.  *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

check of every royalty owner in Oklahoma" from 1985 through 2017.  [Doc. 72, p. 2, ¶ 1; Doc. 91, p. 10; *Cecil,* No. 16-CV-410-KEW (Apr. 26, 2018), Doc. 180, ¶ 4].

On November 19, 2018, the court in *Cecil* entered the Order Approving Class Action Settlement and Final Judgment ("*Cecil* Judgment").  [Doc. 72, p. 2, ¶ 2; Doc. 91, p. 10; *Cecil,* No. 16-CV-410-KEW (Nov. 19, 2018), Doc. 259].  The *Cecil* Judgment was the result of a settlement between BP and plaintiffs in that case.  [Doc. 72, p. 2, ¶ 3; Doc. 91, p. 10].  Th*e Cecil* Judgment defined the Settlement Class as those who fell within the class definition below and who did not timely and properly submit a Request for Exclusion, or who were not otherwise excluded from the Settlement Class by Order of the court:

> All persons or entities, except as specifically excluded below, who are or were royalty owners in wells located in Oklahoma which had production during any portion of the time period from January 1, 1985 through and including December 31, 2017, where Defendant BP America Production Company (including its affiliated predecessors and affiliated successors) is or was the operator (or a working interest owner) who marketed its share of gas as to production before January 1, 2018.  The claims in this matter relate to royalty payments for gas and its constituents (such as residue gas, natural gas liquids, helium, nitrogen, or drip condensate).

> Excluded from the Class are:  (1) United States agencies and Indian tribes and allottees; (2) the State of Oklahoma or any of its agencies or departments that own royalty interests; (3) Defendant, its affiliates, predecessors, and employees, officers, and directors; (4) the claims of royalty owners to the extent their claims are covered by prior settlement agreements, if any, releasing claims as to all or part of the Class Period, but only to the extent such prior settlements fully released the claims of such royalty owner(s) that would be released by this proposed class settlement as to the Class Wells, Released Parties, and Released Claims (the intent being that this Settlement be and remain effective as to any claims not already released by any such prior settlement agreements); (5) overriding royalty owners and others whose interest was carved out from the lessee's working interest; (6) officers of the Court in this case; (7) persons or entities that the Court determines Plaintiff's Counsel are prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; (8) any publicly traded company and their affiliated entities that produces, gathers, processes or markets gas; and (9) royalty owners who are suing in their individual capacities only for the alleged underpayment or nonpayment of royalties in *Watts et al. v. BP America Production*

*Company*, Case No. C-2001-73 in the District Court for Pittsburg County, Oklahoma.

[Doc. 72, pp. 2-3, ¶ 4; Doc. 91, p. 10; Doc. 72-2, pp. 16-17]. Chieftain and Castlerock are members of the *Cecil* Settlement Class, and Chieftain's well Kathleen Anderson #6 and Castlerock's well Bowen 3-18/7H were included in the Class Well List for the *Cecil* Judgment. [Doc. 72, p. 3, ¶ 5; Doc. 91, p. 10; Doc. 72-2, pp. 122-23]. Neither Chieftain nor Castlerock submitted a request for exclusion from the *Cecil* Settlement or were excluded by order of the *Cecil* court. [Doc. 72, p. 3, ¶ 6; Doc. 91, p. 10]. As Class Members, Plaintiffs are also "Releasing Parties." [Doc. 72, p. 3, ¶ 7; Doc. 91, p. 10]. Further, Chieftain was an additional class representative. [Doc. 72-1, p. 6].

As part of the *Cecil* Judgment, the Releasing Parties (including Chieftain and Castlerock) released claims that fall within the scope of "Released Claims." [Doc. 72, p. 3, ¶ 8; Doc. 91, p. 10]. "Released Claims" are defined as follows:

> [A]ny and all claims, actions (including class actions), causes of action, choses in action, demands, debts, obligations, duties, liens, liabilities, and theories of liability and recovery of whatsoever kind and nature, whether in contract or tort, at law or in equity, under express or implied covenants or duties, known or unknown, accrued or unaccrued, contingent, prospective or matured, whether for actual, direct, indirect, consequential, treble, or punitive damages, disgorgement, interest, injunctive relief, declaratory relief, equitable relief, or any other type of relief, asserted or that could have been asserted in the Litigation against the Released Parties, or any of them, related to or arising from the underpayment or non-payment by the Released Parties (or on behalf of them) of royalties on gas and gas constituents (including, but not limited to, helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells during the Class Period.
>
> The Released Claims specifically include, without limitation, claims based in whole or in part on allegations: (1) that the Released Parties underpaid and/or failed to pay royalty as a result of direct or indirect deductions (or the factoring of certain monetary or in-kind fees, losses or reductions in production volumes or other burdens into the computation of royalties with the result of reducing royalty payments) associated with marketing, gathering, transporting, compressing, dehydrating, treating, blending, processing, using or providing plant and compressor fuel, or similar services (and also include claims for gas lost through shrinkage, line loss or similar causes) with respect to gas and its constituents (including helium, reside gas, natural gas liquids, nitrogen, and condensate)

produced from the Class Wells; (2) that the Released Parties improperly paid royalty based on proceeds received from the sale of the gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells and without using the volumes produced at or near the wellhead, whether under "percentage of proceeds," "percentage of index", [*sic*] or similar contracts; (3) that the Released Parties underpaid royalty on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells by not paying royalty on (or by deducting in any way) volumes of gas and its constituents used in operations, gas and its constituents used in post-production functions, gas and its constituents used by or for gas plants and other facilities, and gas and its constituents used in the manufacture of products or fuel (sometimes referred to as "fuel gas"); (4) that the Released Parties failed to pay or underpaid royalty as a result of line loss, shrinkage or similar causes, or on drip gas, helium, natural gas liquids, residue gas, nitrogen, and condensate or other substances that separated from the gas stream in the gathering system, gas plant, transmission lines, or other facilities with respect to gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (5) that the Released Parties underpaid royalty by not paying royalty on the full value and/or volume (before deduction of any costs or fuel gas) of residue gas, natural gas liquids, helium, nitrogen, condensate, or other products that were part of the gas stream produced from the Class Wells; (6) that the Released Parties failed to disclose to and/or misled the Releasing Parties concerning, among other things, the amount and nature of deductions from royalty on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (7) that the Released Parties violated any alleged fiduciary duties to the Releasing Parties and/or failed to comply with any other duties relating to royalty payments, including without limitation any implied duty to produce a marketable product (also sometimes referred to as the "marketable product rule" or "marketable condition rule"), or to bear the costs of making such production a marketable product, in calculating and paying royalties on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (8) that the Released Parties failed to provide all of the information required by the Oklahoma Production Revenue Standards Act ("PRSA") or otherwise failed to comply with the PRSA; (9) that the Released Parties failed to make diligent efforts to secure the best terms (including but not limited to pricing terms or other terms that impact price or value) available for the sale of gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate); (10) that the Released Parties failed to account to Class Members for the full value of the production, including all deductions and reductions from the value and/or volume of gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (11) that affiliate or alleged self-dealing transactions by the Released Parties violated or breached any duties owed by the Released Parties to the Releasing Parties or damaged the Releasing Parties; (12) that any royalty payment adjustments (such as prior period adjustments) to prices, values, volumes

or other criteria, made by Defendant in the ordinary course of business with respect to gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells are underpaid as a result of direct or indirect deductions associated with marketing, gathering, transporting, compressing, dehydrating, treating, blending, processing, providing plant and compressor fuel, or similar services; (13) that as a result of the Released Parties' actions with respect to the Class Wells, the Released Parties (or any of them) are liable to Class Members for alleged violations of RICO, breach of lease (express and/or implied covenants), tortious breach of lease or contract, breach of fiduciary or quasi-fiduciary duty, actual fraud, constructive fraud, deceit, conversion, conspiracy, unjust enrichment/disgorgement, accounting, actual damages, treble damages, punitive damages (including but not limited to punitive damages related to or arising out of an increased financial benefit derived as a result of the conduct of Defendant (including its affiliated predecessors and affiliated successors) as to Class Members, or damages related to alleged reprehensibility of conduct by Defendant (including its affiliated predecessors and affiliated successors) as to Class Members), injunctive relief, statutory interest, or penalties; and (14) that the Released Parties failed to pay statutory interest on the underpayment or non-payment of royalty referenced in (1) through (13) above. Any and all claims of the Releasing Parties not released by this Settlement Agreement are expressly reserved.

[Doc. 72, pp. 3-4, ¶ 8; Doc. 91, p. 10; Doc. 72-2, pp. 11-14, § 1.35].

The Notice of Proposed Settlement of Class Action in *Cecil* generally described the claims litigated and to be settled as follows:

The Litigation seeks damages for Defendant's alleged underpayment of royalties to the royalty owners in the Class described above on Oklahoma wells where Defendant (or a predecessor or affiliate of Defendant) is or was the operator or, as a non-operator, Defendant (or a predecessor or affiliate of Defendant) separately marketed gas.

Plaintiff John Cecil ("Plaintiff") alleges that BP America breached an implied covenant to market, breached the underlying leases, breached an alleged fiduciary duty, violated RICO, and committed fraud with respect to royalty payments for gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen and condensate).

These claims are premised on a variety of allegations, including but not limited to the allegations that Defendant (or a predecessor or affiliate of Defendant): (1) made various deductions and reductions from royalty payments that should not have been made by deducting direct and indirect fees for marketing, gathering, compression, dehydration, processing, treatment, and other similar services before the gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen, and drip condensate) was a "marketable product"; (2) did not pay royalty, or underpaid

> royalty, on gas that was used off the lease premises or in the manufacture of products; (3) did not pay royalty, or underpaid royalty, on drip condensate that dropped out of the gas stream; (4) failed to provide to royalty payees all of the information required by statute; and, (5) made affiliate sales.
>
> Defendant expressly denies all allegations of wrongdoing or liability with respect to the claims and allegations in the Litigation. The Court has made no determination with respect to any of the parties' claims or defenses. A more complete description of the Litigation, its status, and the rulings made in the Litigation are available in the pleadings and other papers maintained by the United States District Court for the Eastern District of Oklahoma, located at 101 North 5th Street, Muskogee, Oklahoma 74401, in the file for Case No. 16-CV-00410-KEW.

[Doc. 92-9, p. 10; *see also Cecil,* 16-CV-410-KEW (Oct. 18, 2018, Doc. 244-1, p. 9]. Pursuant to the *Cecil* Judgment,

> The Releasing Parties are hereby deemed to have finally, fully, and forever conclusively released, relinquished, and discharged all of the Released Claims against the Released Parties to the fullest extent permitted by law. . . . The releases and prohibitions . . . apply equally to any claim that relates to the subject matter of the Released Claims except as expressly excluded therefrom. The Court's approval of the Settlement Agreement and entry of judgment herein shall have the effect of barring each of the Releasing Parties from asserting any claim from which that party would be barred by a judgment resolving the certified claims herein had such claims been brought by such party individually.

[Doc. 72, p. 4, ¶ 11; Doc. 91, p. 10; Doc. 72-1, pp. 10-11, ¶ 11].

## IV. Analysis

BP argues that the entirety of Chieftain's claims and Castlerock's claims as a royalty owner are precluded by the *Cecil* Judgment.

### A. Claim Preclusion Elements

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)

(internal footnote omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).[4]  That

is, under claim preclusion "a final judgment on the merits of an action precludes the parties or their

privies from relitigating issues that were *or could have been raised* in the prior action."  *Wilkes*,

314 F.3d at 503-04 (emphasis in original) (quoting *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d

1464, 1467 (10th Cir. 1993)).  "The principle underlying the rule of claim preclusion is that a party

who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have

another chance to do so."  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221,

1239 (10th Cir. 2017) (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006)).

Claim preclusion requires that BP prove three elements:  "(1) a [final] judgment on the

merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the

cause of action in both suits."  *Johnson*, 950 F.3d at 708 (quoting *Lenox MacLaren Surgical Corp.*,

847 F.3d at 1239); *id.* at 712 ("It is beyond cavil that claim preclusion is an affirmative defense,

as to which the defendant bears the burden of proof."); *see also Pelt v. Utah*, 539 F.3d 1271, 1284-

89 (10th Cir. 2008) (class action judgment); *Barker v. Ault*, 40 P.3d 463, 467 (Okla. 2001).  "If the

relevant facts are undisputed, the application of preclusion principles to those facts is a question

of law."  *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1230.

---

[4] Cecil originally premised jurisdiction on diversity under 28 U.S.C. § 1332, which would require
this court to apply Oklahoma claim preclusion law.  *See Cecil,* No. 16-CV-410-KEW (Sept. 28,
2016), Doc. 2, ¶ 2; *Mid-Continent Cas. Co. v. True Oil Co.*, 767 F.3d 1000, 1004 (10th Cir. 2014)
(quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir.
2002)) (a federal court must "apply state law to determine the 'claim-preclusive effect of a federal
diversity judgment'").  However, the Second Amended Complaint in *Cecil*—the operative
pleading at the time of the *Cecil* Judgment—invoked the court's federal question jurisdiction
pursuant to 28 U.S.C. § 1331.  "The preclusive effect of a federal-court judgment is determined by
federal common law."  *Johnson v. Spencer*, 950 F.3d 680, 708 (10th Cir. 2020) (quoting *Taylor*,
553 U.S. at 801).  Regardless, both the Tenth Circuit and Oklahoma Supreme Court have adopted
the transactional approach and therefore no conflict exists.  *Wilkes v. Wyo. Dep't of Emp't Div. of
Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002); *Chandler v. Denton*, 741 P.2d 855, 862-63
(Okla. 1987)).

No dispute exists as to the first and second elements.  [Doc. 91, p. 21].[5]  Plaintiffs argue

that the third element—identity of the cause of action in both suits—is not satisfied because the

claims in this case are separate and distinct from those asserted in *Cecil*.

Plaintiffs first contend that the *Cecil* Judgment is not preclusive because *Cecil* only

involved claims for *gas* royalty owners, whereas this case asserts claims for royalty owners,

working interest owners, and overriding royalty owners who received Untimely Payments,

*whether as payment for oil or gas*.  BP does not directly respond to this argument, but asserts that

an agreed judgment can broaden an action for preclusion purposes.

An agreed settlement may broaden the scope of litigation, for claim preclusion purposes,

by virtue of the terms thereof.  *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 530 (7th Cir. 2000).

Looking to the terms of the *Cecil* Settlement Agreement, as incorporated into the *Cecil* Judgment,

the agreed settlement is explicitly limited to the Settlement Class, which was defined to include:

> All persons or entities . . . who are or were royalty owners in wells located in
> Oklahoma which had production during any portion of the time period from
> January 1, 1985 through and including December 31, 2017, where Defendant BP

---

[5] Further, based on its review, the court concludes that the first two elements are satisfied.  As comprehensively explained by U.S. District Judge Charles B. Goodwin of the Western District of Oklahoma;

> While private settlements ordinarily have no preclusive effect, "[t]he process by which a class action settlement is approved has the effect of turning the private settlement into . . . a judgment," which is preclusive for *res judicata* purposes.  6 NEWBERG ON CLASS ACTIONS § 18:19 (5th ed.).  Moreover, absent class members may be bound by a judgment or ruling even though they are technically non-parties to the action who did not have a "full and fair opportunity to litigate the claim or critical issue."  *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1186 (10th Cir. 2014) (internal quotation marks omitted).  This is because "properly conducted class actions" are a recognized exception to the general rule against non-party preclusion.  *Taylor*, 553 U.S. at 894 (citation omitted).

*Briggs v. Freeport-McMoran Copper & Gold, Inc.,* No. CIV-13-1157-G, 2019 WL 1087149, at *4 (W.D. Okla. Mar. 6, 2019) (internal citation omitted; internal citation altered).

America Production Company . . . is or was the operator (or a working interest owner) who marketed *its share of gas* as to production before January 1, 2018. The claims in this matter relate to royalty payments *for gas and its constituents* (such as residue gas, natural gas liquids, helium, nitrogen, or drip condensate).

[Doc. 72, pp. 2-3, ¶ 4; Doc. 91, p. 10; Doc. 72-2, p. 16 (emphasis added)].[6] Further, the *Cecil* Judgment dismissed with prejudice only "Released Claims," defined to include "any and all claims, actions (including class actions), causes of action . . . asserted or that could have been asserted in the Litigation against the Released Parties, or any of them, related to or arising from the underpayment or non-payment by the Released Parties (or on behalf of them) *of royalties on gas and gas constituents* (including, but not limited to, helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells during the Class Period." [*Id.* at ¶ 25; Doc. 72-2, p. 11, § 1.35]. Thus, pursuant to its plain and unambiguous language, the *Cecil* Settlement Agreement—and therefore *Cecil* Judgment—is explicitly limited to royalty payments for gas production, and cannot reasonably be construed to apply to claims for royalty payments for

---

[6] The parties both contend that the court may determine the claim preclusive effect of the *Cecil* Judgment in this matter based solely its four corners and the terms of the Settlement Agreement incorporated therein. [Doc. 91, p. 24; Doc. 96, pp. 14-15]. Nevertheless, both parties offer extrinsic evidence as to the parties' intent. Because the court concludes that the language of the *Cecil* Judgment and Settlement Agreement are plain and unambiguous, the court declines to consider the extrinsic evidence submitted and looks solely to the *Cecil* Judgment and the defined terms as set forth in the Settlement Agreement, which the Judgment explicitly incorporated by reference. [Doc. 72-1, p. 5]. *See* OKLA. STAT. tit. 15, § 154 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006) (internal footnote omitted) ("Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties."). *See also generally Devine v. Ladd Petroleum Corp.*, 743 F.2d 745, 749 (10th Cir. 1984); *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 831 (10th Cir. 2005) ("The general rules of contract interpretation under state law apply to settlement agreements."); *Satsky*, 7 F.3d at 1468 (consent decree as a result of settlement treated as contract).

oil production.[7] Thus, no identity of cause of action exists with respect to claims premised on oil royalties and, to the extent premised on Untimely Payments for oil production, plaintiffs' claims are not precluded.

For the reasons discussed below, the court concludes that, insofar as the claims in this action are premised on Untimely Payments for *gas* production, the claims asserted in *Cecil* and those asserted here are identical for purposes of claim preclusion.

Plaintiffs argue that the claims asserted in *Cecil* are different than the claims asserted in this case because "[t]he claims asserted (and settled) in *Cecil* were for 'underpayment or nonpayment of royalties on natural gas and/or constituents of the gas stream produced from wells in Oklahoma,' which are *breach of contract* claims against BP," whereas this case "is not a breach of contract action – rather, it is an action based on a right to interest on late payments of oil and gas proceeds created by statute for the benefit of any owner." [Doc. 91, p. 22 (emphasis in original)]. However, the Oklahoma Supreme Court has rejected this distinction. *See Purcell v. Santa Fe Minerals, Inc*., 961 P.2d 188, 193 (Okla. 1998). In *Purcell,* a lessor of certain mineral interests brought suit against a lessee seeking damages for underpayment of royalties, including pre and post-judgment interest. *Id.* at 189. The trial court awarded plaintiff $317,504.04 with an additional amount of interest through partial summary judgment. *Id.* On appeal, the Oklahoma Supreme Court considered the appropriate statute of limitations—the five year period applicable to breach of contract claims or a lesser period applicable to statutory claims. *Id.* at 190. The Oklahoma Supreme Court concluded:

---

[7] "A royalty is an agreed return paid for the oil, gas, and minerals, *or either of them,* reduced to possession and taken from the leased premises." *Mittelstaedt v. Santa Fe Minerals, Inc*., 954 P.2d 1203, 1205 n.1 (Okla. 1998) (emphasis added).

[Defendant operator] focuses on § 540's [8] requirement to pay 12% interest, and states that it had no express duty under its leases (or contracts) to pay interest, and that the obligation to pay the interest is thus a liability arising from this statute. However, we have recently noted the duty to pay interest on production payments apart from § 540. *Heiman v. Atlantic Richfield Co*., 1995 OK 19, ¶¶ 14-16, 891 P.2d 1252, 1258. This duty is consistent with 23 O.S.1991 § 6. Interest on underpayment thus must be paid both before and after the effective date of § 540. That statute did not create a new liability on behalf of [defendant operator] to pay interest . . . .

The 12% interest is based upon a breach of the obligation to pay the royalty arising *ex contractu* in the manner prescribed by § 540. We have said that only a single cause of action may be predicated upon the same set of facts, but different theories of liability may be argued in support of the cause of action. In [defendant operator's] view the contractual cause of action and a statutory liability both arise separately, one from the breach of a contract and the other from non-payment in accordance with § 540. **We disagree, and view the 12% interest as part of the contractual claim.**

*Id.* at 192-93 (internal citation omitted) (emphasis added). Thus, the right to statutory interest cannot be separated from the contractual claim.

Plaintiffs next contend that no identity of cause of action exists because the language of the *Cecil* Settlement Agreement is limited to claims "related to or arising from the *underpayment or non-payment* by the Released Parties (or on behalf of them) of royalties on gas and gas constituents," and therefore does not include "late" or "untimely" payments. [Doc. 91, p. 23].

Both the Tenth Circuit and Oklahoma Supreme Court have adopted the "transactional" approach of § 24 of the Restatement (Second) of Judgments. Section 24 of Restatement (Second) of Judgments provides:

(1)     When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2)     What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to

---

[8] Section 540 is now codified at § 570.10 of the PRSA. *Id.* at 190.

> such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24 (Am Law Inst., 1982). Section 25 of the Restatement provides:

> The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action
>
> (1)     To present evidence or grounds or theories of the case not presented in the first action, or
>
> (2)     To seek remedies or forms of relief not demanded in the first action.

Restatement (Second) of Judgments, Exemplifications of General Rule Concerning Splitting § 25 (Am Law Inst., 1982). Thus, "[u]nder this approach, a 'contract' is generally considered to be a 'transaction,' so that all claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action." *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988).

Illustration 2. to § 25 of the Restatement provides the following example:

> A sues B for a breach of a contract calling for delivery of certain appliance, alleging as the breach that the appliances did not meet the agreed specifications. After judgment for B, A commences a second action, this time alleging late delivery of the appliances as the breach. The second action is precluded.

Restatement (Second) of Judgments § 24 cmt. b, illus. 2 (Am Law Inst., 1982).

"The scope of a judgment in a litigated class action parallels the scope of any litigated judgment: it will preclude claims arising out of the same transaction and occurrence. For settlement judgments, courts have developed a parallel test by giving preclusive effect to releases contained in settlements so long as the released conduct arises out of the 'identical factual predicate' as the claims at issue in the case." 6 Newberg on Class Actions, § 18:19 (5th ed. 2019). In a recent unpublished decision, a Tenth Circuit panel recognized that, pursuant to the identical

factual predicate rule, "class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, — F. App'x —, 2020 WL 1285849, at \*11 (10th Cir. Mar. 18, 2020) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005)); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) ("[A] court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint."). "[T]he overlap between elements of *claims* is not dispositive. Class actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims." *Wal-Mart Stores, Inc.*, 396 F.3d at 108.

The *Cecil* Settlement Agreement releases "any and all claims, actions (including class actions) . . . asserted *or that could have been asserted in the Litigation* against the Released Parties, or any of them, related to or arising from the underpayment or non-payment by the Released Parties (or on behalf of them) *of royalties on gas and gas constituents . . . produced from the Class Wells during the Class Period*." [Doc. 72-2, p. 11, § 1.35 (emphasis added)]. It is undisputed that plaintiffs were members of the *Cecil* Settlement Class and that Chieftain's and Castlerock's wells were included in the Class Well List for the *Cecil* Judgment. [Doc. 72, p. 3, ¶ 5; Doc. 91, p. 10; Doc. 72-2, pp. 122-23]. It is further undisputed that, in *Cecil*, plaintiffs alleged that BP enriched itself through "every monthly check of every royalty owner in Oklahoma" during the relevant time period. [Doc. 72, p. 2, ¶ 1; Doc. 91, p. 10]. Thus, the claims in this case arise out of the payment of gas proceeds from the identical wells, and therefore contracts, as the settled claims in *Cecil*. That is, the factual predicate—BP's conduct related to payment under the gas leases—is the same

in this case and *Cecil*. *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc*., 679 F. Supp. 2d 1287, 1308 (D. Kan. 2010). The fact that plaintiffs now seek recovery under different legal theories does not prohibit preclusion.

Further, in clause (8), "Released Claims" is defined to include claims "(8) that the Released Parties failed to provide all of the information required by the Oklahoma Production Revenue Standards Act ('PRSA') or otherwise failed to comply with the PRSA," and, in clause (13), that the Released Parties are liable to Class Members "for alleged violations of RICO, breach of lease (express and/or implied covenants), tortious breach of lease or contract, breach of fiduciary or quasi-fiduciary duty, actual fraud, constructive fraud, deceit . . .statutory interest, or penalties." [Doc. 72-2, pp. 13-14, § 1.35]. Thus, "Released Claims" specifically includes allegations that BP "otherwise failed to comply with the PRSA" with respect to royalties paid to Class Members on gas and gas constituents produced from Class Wells during the Class Period, and that, with respect to the Class Well, defendant is liable for statutory interest. Plaintiffs urge the court to construe the phrase as being limited to "underpayment or non-payment" of royalties. However, neither subsection is so limited. Rather, clause (8) applies to allegations that defendant "otherwise failed to comply with the PRSA, and clause (13) applies to "the Released Parties' actions *with respect to the Class Wells*." [Doc. 72-2, pp. 13 -14, § 1.35 (emphasis added)].[9] "[C]ourts may not read words or terms into the contract that it does not contain." *Husky Ventures, Inc. v. B55 Invs., Ltd*., 911 F.3d 1000, 1015 (10th Cir. 2018) (citing *Dismuke v. Cseh,* 830 P.2d 188, 190 (Okla. 1992)).

---

[9] Plaintiffs emphasize that other clauses in the *Cecil* Settlement Agreement are limited to "underpayment or non-payment" of royalties. Reading the phrase "underpayment or non-payment" of royalties into clauses eight (8) and thirteen (13) would render the inclusion of the phrase in other clauses a nullity. "A contract shall not be interpreted in a manner that leaves words without meaning and renders language superfluous." *North Star Mut. Ins. Co. v. Rose*, 27 F. Supp. 3d 1250, 1253 n.7 (E.D. Okla. 2014) (quotation omitted).

Nor may the court "make a better contract than the parties themselves entered." *Roye Realty &*

*Developing, Inc. v. Watson*, 2 P.3d 320, 329 (Okla. 1996). Thus, the *Cecil* Settlement

Agreement—and therefore Judgment—includes plaintiffs' claims to the extent premised on gas

proceeds and therefore there is an identity of causes of action in this suit and *Cecil* for purposes of

claim preclusion.

Here, it is undisputed that the claims in this case arise out of the payment of gas proceeds

from the identical wells, and therefore contracts, as the claims subject of the *Cecil* Judgment. Thus,

the claims arise out of the identical factual predicate and any claim for statutory interest for

untimely royalty payments for gas and gas constituents produced from Class Wells for the period

arising from January 1, 1985 through December 31, 2017 is precluded.[10]

B.      *Due Process*

Plaintiffs next contend that application of claim preclusion would violate their due process

rights. As recognized by the Tenth Circuit, "[i]t is well settled that a class action judgment is

binding on all class members"; however, "[i]t is also well settled that a class action judgment will

not bind absent members if they were not accorded due process of the law." *Pelt*, 539 F.3d at 1284

(citing *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). "The preclusive effect of a prior judgment will

depend upon whether absent members were 'in fact' adequately represented by parties who are

present." *Id.*

---

[10] The court notes that the *Cecil* Judgment applies only to claims from January 1, 1985 through
December 31, 2017. [Doc. 721-1, p. 5]. Plaintiffs do not define the relevant class period in this
case. Insofar as plaintiffs received Untimely Payments after December 31, 2017, and is making a
claim relative to those Untimely Payments, such claims are not precluded.

Plaintiff Chieftain was an Additional Settlement Class Representative in *Cecil* and therefore was not an "absent member." *See* [Doc. 72-1, p. 6]. Accordingly, Chieftain cannot assert that it was not afforded due process.

With respect to Castlerock, it argues that neither the *Cecil* Settlement nor the *Cecil* Notice of Proposed Settlement of Class Action informed it that its claims as a royalty owner in this case were being settled and/or released. "[I]n order to satisfy due process, [a]ll that the notice must do is fairly apprise prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Tennille v. W. Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015) (quoting *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012)).

Plaintiffs urge the court to adopt the reasoning of the Eleventh Circuit in *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998), and conclude that, because the *Cecil* Notice did not adequately inform absent class members that claims for "late payments" were included in the release, claim preclusion cannot apply. In *Twigg*, plaintiff Kevin Twigg filed a class action lawsuit alleging that Sears did not perform the AccuBalance service on his tires that he purchased, and that, in fact, Sears actually performed the service less than half the time it was sold to customers. *Id.* at 1223. Sears moved to dismiss the actions asserting, in part, that the settlement, release, and final judgment in a 1992 consumer class action against Sears barred Twigg's claims. *Id.* at 1224. In opposition to claim preclusion, Twigg argued that the notice of the 1992 class action was insufficient to afford him due process. *Id.* at 1227. Looking to the 1992 national class action notice, the court noted that it "describe[d] the gravamen of the action as follows: 'In their consolidated complaint, plaintiffs alleged that Sears and other defendants violated federal and state laws by making *unnecessary and/or improper repairs* to its customers' automobiles.'" *Id.* at 1228

(emphasis in original). The Eleventh Circuit concluded that the notice "[did] not alert a reader that the prior action included claims by Sears customers based upon being billed for services that Sears never performed," and therefore the notice did not "adequately inform an absent class member like Twigg either that claims like his were being litigated or that they had been settled." *Id.* Accordingly, the deficiencies in the notice prohibited claim preclusion because "invocation of the bar would not be consistent with due process." *Id.* at 1229.

Subsequent decisions have distinguished *Twigg*, reasoning that the *Twigg* notice included only "a pithy, one sentence description" of the released claims, but that due process is satisfied where the notice include a more detailed description of the type of claims being litigated and settled. *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1287-88 (11th Cir. 2007). In *Cecil*, the Notice of Proposed Settlement of Class Action explained that the notice was sent because the recipient may be a member of the Settlement Class in the Litigation based on receipt of royalties from the identified wells, and directed the recipient to "[r]ead this Notice carefully to see what your rights and options are in connection with th[e] Settlement." [Doc. 92-9, p. 8; *see also Cecil,* 16-CV-410-KEW (Oct. 19, 2018, Doc. 244-1, p. 7]. The Notice generally described the claims litigated and to be settled as follows:

> The Litigation seeks damages for Defendant's alleged underpayment of royalties to the royalty owners in the Class described above on Oklahoma wells where Defendant (or a predecessor or affiliate of Defendant) is or was the operator or, as a non-operator, Defendant (or a predecessor or affiliate of Defendant) separately marketed gas.
>
> Plaintiff John Cecil ("Plaintiff") alleges that BP America breached an implied covenant to market, breached the underlying leases, breached an alleged fiduciary duty, violated RICO, and committed fraud with respect to royalty payments for gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen and condensate).
>
> These claims are premised on a variety of allegations, including but not limited to the allegations that Defendant (or a predecessor or affiliate of Defendant): (1) made

various deductions and reductions from royalty payments that should not have been made by deducting direct and indirect fees for marketing, gathering, compression, dehydration, processing, treatment, and other similar services before the gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen, and drip condensate) was a "marketable product"; (2) did not pay royalty, or underpaid royalty, on gas that was used off the lease premises or in the manufacture of products; (3) did not pay royalty, or underpaid royalty, on drip condensate that dropped out of the gas stream; (4) failed to provide to royalty payees all of the information required by statute; and, (5) made affiliate sales.

[Doc. 92-9, p. 10; *see also Cecil,* 16-CV-410-KEW (Oct. 18, 2018, Doc. 244-1, p. 9]. In four separate places, the Notice directed the recipient to a website where the recipient could review and download the complete Settlement Agreement, including the complete definition of "Released Claims," [Doc. 92-9, pp. 8 n.1, 9-10, 14; *see also Cecil,* 16-CV-410-KEW, Doc. 244-1, pp. 7 n.1, 10-11, 13], and provided an address for the Settlement Administrator who could be contacted with questions. [Doc. 92-9, p. 9; *see also Cecil,* 16-CV-410-KEW, Doc. 244-1, p. 8]. The Notice explained that class members may be entitled to damages, and, by taking no action, the recipient would be bound by the outcome of the settlement. [Doc. 92-9, p. 12; *see also Cecil,* 16-CV-410-KEW, Doc. 244-1, p. 11]. It went on to explain the procedure to request exclusion from the Settlement Class and explicitly stated, in bold lettering:

> **If you do not follow these procedures—including mailing the Request for Exclusion so that the Settlement Administrator receives it by the deadline set out above—you will <u>not</u> be excluded from the Settlement Class, and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement, including the release of claims.**

[Doc. 92-9, pp. 12-13; *see also Cecil,* 16-CV-410-KEW, Doc. 244-1, pp. 11-12].

The court is satisfied that the *Cecil* Notice of Proposed Settlement satisfied the requirements of due process and adequately informed absent class members of the nature of the claims to be released. Unlike the single-sentence description of claims to be released in *Twigg*, the *Cecil* Notice included three paragraphs generally describing the claims litigated and to be

released, as well as instructions as to how to obtain additional information. The Notice generally described the claims to be released to include allegations that BP "breached the underlying leases" and "committed fraud with respect to royalty payments for gas and its constituents." This is clearly broad enough to encompass claims for Untimely Payments. That the *Cecil* Notice did not use the phrases "late" or "untimely" payments does not render the notice insufficient. *See Adams*, 493 F.3d at 1288; *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 802-03 (8th Cir. 2004). Further, the Notice directed the recipient to a website where the complete Settlement Agreement could be reviewed. As previously stated, the *Cecil* Settlement Agreement explicitly applied to any claim that BP "failed to provide all of the information required by the Oklahoma Production Revenue Standards Act ('PRSA') *or otherwise failed to comply with the PRSA*" or that defendant was liable to class members for statutory interest. [Doc. 72-2, p. 13, § 1.35 (emphasis added)]. A reasonable person could consider the Settlement Agreement and make an informed, intelligent decision as to whether to be bound by the *Cecil* Judgment, even with respect to Untimely Payments, including whether to solicit additional information. *See generally* Newberg on Class Actions, § 8:12 (2019). Thus, application of claim preclusion does not violate plaintiffs' due process rights.

C.    *Waiver or Acquiescence*

Finally, plaintiffs argue that BP waived its claim preclusion affirmative defense because it acquiesced in the continuation of these proceedings. Plaintiffs contend that most Circuits recognize an exception to the general rule against claim splitting "if the parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein." *See In re Super Van, Inc.*, 92 F.3d 366, 371 (5th Cir. 1996) (citing Restatement (Second) Judgments § 26(1)(a)). Plaintiffs do not direct the court to any Tenth Circuit precedent recognizing the

exception. Regardless, the exception is inapplicable because BP asserted the affirmative defense of res judicata and/or collateral estoppel in its Answers. [Doc. 15, p. 10, ¶ 81; Doc. 81, p. 10, ¶ 86; Doc. 111, p. 11, ¶ 86]. *See Davis v. Sun Oil Co.,* 148 F.3d 606, 612-13 (6th Cir. 1997) (distinguishing *Super Van* because defendants in that case did not plead *res judicata* and had indicated to the second court that they preferred not to have the two matters consolidated); *Cent. Garden & Pet Co., Inc. v. Scotts Co*., 85 F. App'x 633, 634 (9th Cir. 2004). Further, plaintiffs submit no evidence that BP affirmatively stated that it preferred to litigate the two matters separately. BP therefore has not acquiesced to claim splitting.

## V.     Conclusion

WHEREFORE, defendant BP America Production Company's Motion for Partial Summary Judgment [Doc. 72] is granted in part and denied in part. The motion is denied with respect to claims premised on Untimely Payments for oil proceeds, as well as for claims that may be premised on Untimely Payments for gas proceeds after December 31, 2017. The motion is otherwise granted.

IT IS SO ORDERED this 26th day of March, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE